## LOGAN v. UNITED STATES.

(Circuit Court of Appeals, Sixth Circuit. June 2, 1903.)

### No. 1,187.

1. FORGERY OF NATIONAL BANK NOTES—SIGNING FICTITIOUS NAMES.

The unauthorized signing of names to notes of a national bank, purporting to be those of the president and cashier, constitutes the crime of forging such notes, under Rev. St. § 5415 [U. S. Comp. St. 1901, p. 3662], whether the names so signed are in fact those of the president and cashier or of fictitious persons.

2. SAME—EFFECT OF STATUTE MAKING FORGED NOTES REDEEMABLE.

The fact that national bank notes to which the signatures have been forged, and which have been put in circulation, are made redeemable by Act July 28, 1892, 27 Stat. 322, c. 317 [U. S. Comp. St. 1901, p. 3491], does not relieve one who forges the names of the president and cashier of a national bank to genuine but unsigned notes from the crime of forging such notes, as defined in Rev. St. § 5415 [U. S. Comp. St. 1901, p. 3662].

3. SAME—DUPLICATION OF OFFENSE.

Two offenses cannot be created out of the same criminal act by charging the defendant in one count with having forged a national bank note, and in another count with having forged the signatures to the same note.

4. SAME—KEEPING IN POSSESSION WITH INTENT TO PASS—SEPARATE OFFENSES.

Under Rev. St. § 5431 [U. S. Comp. St. 1901, p. 3671], which makes it a crime for any person to keep in possession, with intent to pass, any forged obligation of the United States, a defendant may be convicted of a separate offense for each one of such obligations he keeps in possession with intent to pass.

In Error to the Circuit Court of the United States for the Eastern District of Tennessee.

Reuben L. Cates, John C. Houk, E. F. Mynatt, and L. C. Houk, for plaintiff in error.

William D. Wright, U. S. Atty., and J. M. Simerly, Asst. U. S. Atty.

Before LURTON, SEVERENS, and RICHARDS, Circuit Judges.

RICHARDS, Circuit Judge. The plaintiff in error was convicted, on 10 separate counts, of forging and of passing forged national bank notes, under section 5415 of the Revised Statutes [U. S. Comp. St. 1901, p. 3662], and of keeping forged national bank notes in his possession with intent to pass them, under section 5431 [U. S. Comp. St. 1901, p. 3671]. On each of 8 of the counts he was sentenced to be imprisoned at hard labor for 15 years, the sentences to run concurrently, and on each of the other 2 counts he was sentenced to be imprisoned for 5 years, the sentences to run concurrently, and to begin at the expiration of the 15 years' sentence.

There are many assignments of error, but those we deem worthy of notice are addressed, first, to the question whether, under the admitted facts, the national bank notes involved were forged, within the meaning of the statute; and, second, to the question whether the defendant below was sentenced, and therefore punished more than once for the same offense.

1. The national bank notes which the plaintiff in error, Logan, was convicted of having forged, kept, and passed, were genuine but incom-

¶ 1. See Forgery, vol. 23, Cent. Dig. § 26.

plete notes, being part of a lot of $40,000 of unsigned notes, shipped by the Comptroller of the Currency in June, 1901, to the National Bank of Montana, at Helena, and stolen in transit at a point on the Great Northern Railroad near Wagner, Mont., from the express company, by a band of train robbers of which Logan was the leader. Subsequently the signatures of fictitious persons as president and cashier of the bank were signed to the notes, some of which were passed and others found in possession of the defendant below.

The fact that the names signed as president and cashier were fictitious is of no importance. The public cannot be presumed to know who are president and cashier of each national bank at the time each issue of its notes is put in circulation. The public mischief is the same whether the names forged are those of the genuine officers or of fictitious persons. U. S. v. Turner, 7 Pet. 132, 8 L. Ed. 633.

But it is contended that the forging of the signatures of the president or vice president and cashier to a genuine but unsigned national bank note cannot constitute the crime of forgery, under section 5415, since the passage of the act of July 28, 1892, 27 Stat. 322, c. 317 [U. S. Comp. St. 1901, p. 3491], because such note is now, by force of the express provisions of this act, redeemable as other national bank notes, and therefore no one can be defrauded by the fictitious signatures.

The act of July 28, 1892, provides as follows:

"That the provisions of the Revised Statutes of the United States, providing for the redemption of national bank notes shall apply to all national bank notes that have been or may be issued to, or received by any national bank, notwithstanding such notes may have been lost by or stolen from the bank and put in circulation without the signature or upon the forged signature of the president or vice-president and cashier."

It is to be observed that this is a provision for the redemption and not the circulation of lost or stolen national bank notes, whether put in circulation unsigned or upon forged signatures. It applies the redemption provisions of the general law to these notes, but leaves the circulation provisions as they are. The conditions of the statutes must still be complied with before a national bank can lawfully issue its notes and put them in circulation as money. Thus, section 5172, Rev. St., being section 22 of the act of June 3, 1864, 13 Stat. 105 [U. S. Comp. St. 1901, p. 3477], requires that national bank notes "shall also express upon their face the promise of the association receiving the same to pay on demand, attested by the signatures of the president or vice-president and cashier"; and section 5182, being section 23 of the act of June 3, 1864, 13 Stat. 106, c. 106 [U. S. Comp. St. 1901, p. 3481], provides that "after any association receiving circulating notes under this title, has caused its promise to pay such notes on demand to be signed by the president or vice-president and cashier thereof, in such manner as to make them obligatory promissory notes payable on demand, at its place of business, such association may issue and circulate the same as money." So it is only "after" having caused the notes to be signed by its president or vice president and cashier that the association is authorized to "issue and circulate the same as money."

The purpose of forging the signatures is therefore apparent. It was to give the notes the semblance of having been issued and put in circulation by the bank, for the law requires the bank to have the notes

signed before issuing them. The forging of the signatures for this purpose came within the intent and meaning of section 5415, under which the plaintiff in error was convicted, which provides that "every person who falsely makes, forges, or counterfeits  *  *  *  any note in imitation of, or purporting to be an imitation of, the circulating notes issued by any banking association,  *  *  *  authorized and acting under the laws of the United States,  *  *  *  shall be imprisoned," etc. The forgery denounced by this section is "that of the circulating notes issued by any banking association." The signatures falsely signed were forged to induce persons to believe that the notes had been issued by a national bank and were in circulation.

It is not true that, because these forged notes are redeemable, therefore no one is or can be defrauded. Obviously, whoever is charged with their redemption is defrauded by the act of putting them in circulation. If the bank, then the bank; if the government, then the government. And it was to effect the fraud of making them redeemable that the forgery was committed. But the innocent holder is also defrauded, because he has been deceived into taking a note, not lawfully signed or issued, but stolen, forged, and illegally put in circulation, which is not part of the lawful money of the United States. The fact that the statute makes such a note redeemable does not constitute it the equivalent of a lawfully issued circulating note.

2. Under the first and tenth counts, the defendant below was twice convicted of the same act of forgery, the forgery charged in the first count being of the note, and in the tenth of the signatures to the note. The same thing is true with respect to the second and eleventh counts and third and twelfth counts. Under the thirteenth count he was convicted of passing a note charged as forged, and under the fourteenth of passing the same note, the signatures being charged as forged. These double convictions were not, in our opinion, proper. The crime could not be doubled by changing the method of charging it. The act of forging a certain note was one offense; it could not be duplicated by charging in one count that the note was forged and in another that the signatures were forged. The same thing is true of passing a forged note. Two offenses cannot be created by charging in one count that the note was forged and in another that the signatures to it were forged. For these reasons we are of the opinion that the judgments upon the tenth, eleventh, twelfth, and fourteenth counts ought not to stand.

The contention that the defendant below could not properly be convicted under the fifteenth count of keeping in his possession a certain forged note with intent to pass it, and under the sixteenth count of keeping in his possession another forged note with intent to pass it—in other words, that the keeping of two separate forged notes in his possession with intent to pass them was one act—does not appeal to us as well founded. The keeping, just as the making and the passing, of each forged note, is, or may be treated as, a separate and distinct offense.

In view of what we have said, the judgments upon the tenth, eleventh, twelfth, and fourteenth counts must be reversed, and the cause remanded, with directions to arrest the judgment upon these counts.

The judgment below, so far as it relates to the first, second, third, thirteenth, fifteenth, and sixteenth counts, is affirmed.   Blitz v. United States, 153 U. S. 308, 318, 14 Sup. Ct. 924, 38 L. Ed. 725.