[No. 21826.   Department One.   July 3, 1929.]

THE STATE OF WASHINGTON, *Respondent*, v. BENNY
SILVER *et al.*, *Appellants.*[1]

*W. G. Beardslee* and *J. J. Sullivan,* for appellants.

*Ewing D. Colvin* and *Ethan Allen Peyser,* for respondent.

[1]Reported in 279 Pac. 82.

HOLCOMB, J.—These appellants and one V. F. Smith were put upon trial in the lower court on May 16, 1928, upon an information charging them and two others with gambling offenses upon two counts. Appellants were found guilty, and Smith was acquitted.

Another information had been filed, alleging the same offenses upon the same counts, on April 22, 1926. The first count in both informations charged all of the accused persons with conducting a game of stud poker on about March 11, 1926, on premises described in the information, in Seattle; the second count charged them with conducting a game of craps, on or about March 19, 1926, in the same place. Shortly after the filing of the first information, appellants pleaded not guilty and announced themselves ready for trial. No steps were taken by the state to bring the case on for trial, and thereafter, on January 15, 1927, defendants moved for a dismissal of the case for lack of prosecution by the state, which was duly served the same day, together with a notice of hearing thereon to be had on January 18, 1927, on the prosecuting attorney, and on January 18, 1927, the case was dismissed by the lower court for a lack of prosecution. Thereafter, on March 6, 1928, a new information was filed in the case, charging appellants and the other four defendants with the crime of conducting gambling upon the same two counts. The last information is identical in allegations with the information which had been dismissed for lack of prosecution on January 18, 1927.

Before the last information was set for trial, appellants filed a motion to dismiss it because the case had not been diligently prosecuted, which motion was supported by affidavit in which it was set forth that, because of the neglect and apparent abandonment of the prosecution, appellants would be greatly prejudiced and embarrassed if a trial was allowed on the second

information, because numerous important and essential witnesses, who would have given testimony tending to establish the innocence of appellants of the crime charged, had left Seattle, their whereabouts were unknown and could not be discovered by the exercise of the utmost diligence. The motion was denied.

When the case was called for trial on May 16, 1928, and before a jury was empanelled, appellants again moved for dismissal on the ground that the case had not been diligently prosecuted and because of such lack of diligence appellants had been prejudiced in their defense. This motion was denied.

On the day of trial and before the commencement thereof, the prosecuting attorney asked leave of court to indorse the names of four new witnesses, namely, L. S. May, George W. Aimer, R. A. Allingham and Walter Metzenbaum. This application was resisted by appellants on the ground that these additional witnesses would inject a new element into the case, which appellants were not prepared to meet. Counsel for the state declared that it had not been known until the day before that the witnesses would probably be needed, and that, immediately upon discovery thereof, notice had been given to the attorneys for appellants. Counsel also offered, at the time of making the application, to have the additional witnesses directed to report to counsel for appellants as soon as they came in, so that they could be examined by counsel.

It was disclosed by counsel for the state that May, a well-known handwriting expert, would testify that the signature of one Stone, purported to be one of the incorporators of the Far West Social Club, was in fact signed by appellant Silver; that Metzenbaum was expected to testify who Stone and the other incorporators of the Far West Social Club were, as he was the notary who took the acknowledgment to the articles of

incorporation; that Aimer, an employee in the office of the secretary of state, would identify the articles of incorporation. No statement was made as to the nature of the expected testimony of Allingham, but it had probably been disclosed to counsel for appellants on the day before.

It developed, when the state put Allingham upon the witness stand, that he had been employed as an agent of the state to ascertain the existence and whereabouts of several of the purported incorporators of the Far West Social Club. Most of his testimony was rejected by the trial court upon objection by appellants.

May was not put upon the witness stand by the state. Aimer testified merely to the formal matter of the filing of the original articles of incorporation of the Far West Social Club with the signatures thereon.

At the time the application was made, the state offered to give counsel for appellants every opportunity to examine the additional witnesses, if desired, and a continuance, if necessary, to meet the expected expert testimony of May. The court so ordered.

One of counsel for appellants also stated at the time the application was presented that the testimony of none of the other witnesses, besides that of May, would seem to be disadvantageous to appellants. The only testimony that seemed to be important and material of the additional witnesses was that of May, and he was not produced.

Metzenbaum, one of the additional witnesses, had been attorney for all of appellants in a previous trial of the prosecution for the same offenses. His testimony in this trial was indefinite and uncertain, rather favorable to appellants, and doubtless appellants were entirely familiar with what his testimony would be.

There had also been a trial upon another information against all of the same defendants for a gambling

offense consisting of the alleged conducting of a black-jack game on about March 19, 1926, on the same premises by the same persons. Upon the trial of that prosecution, a verdict of guilty was entered and judgment thereon on May 27, 1926. In that trial, Smith, as well as appellants Silver and LeBow, was convicted, and upon appeal to this court, the conviction was reversed for alleged error in the exclusion of certain testimony on the part of the state for which, and for another error, the case was reversed and remanded to the lower court for a new trial. The decision as to the exclusion of the testimony referred to in that case was afterwards overruled by this court in *State v. Gaffney,* 151 Wash. 599, 276 Pac. 873, which does not concern us now.

At the trial of this case, certain allusions were made by attorneys for appellants respecting the reversal of convictions in the former case, which called for certain explanatory questions on behalf of the prosecution.

On the trial below, the state showed that the premises in question were originally leased by appellant Silver in November, 1925. He then claimed and represented to the agent of the landlord that he acted as agent for a man named J. C. Watson. The lease was taken in the name of Silver. The lessor knew that he pretended to be acting for Watson, and it was provided in the lease that it could be assigned to Watson. Before incorporating this permission to assign the lease to Watson, the agent of the lessor satisfied himself by questioning Silver that Watson would be a satisfactory and desirable tenant. Thereafter, on January 2, 1926, the lease was assigned by Silver to Watson.

Articles of incorporation of the Far West Social Club, signed by certain purported incorporators, namely, J. C. Watson, L. H. Stone, C. L. Waters, H.

Bennett and Sam Day, and acknowledged on the same day before Walter Metzenbaum, as notary public, were produced in evidence. There was evidence tending to show that the signatures of Watson and Day were signed by appellant Silver, and that the handwriting in such signatures was the same handwriting as that of appellant Silver to the lease. The lease of the premises was executed by the owners of the premises, Greene and wife, on November 25, 1925, to appellant Silver.

The scheme of the Far West Social Club appears to have been to have a number of rooms unconnected, but communicating with one front room through a hall or passageway. The members of the Far West Social Club, according to the evidence of appellants, paid $1.50 for a membership fee, and $1.50 for monthly dues. Admission was allowed only to those with membership cards. Smith was a door keeper.

During all the time from the occupation of the premises under the lease, appellant LeBow was in evidence as floor manager of the so-called club rooms, examined the membership cards presented, supervised the games and exercised general control over the patrons at all games. He sometimes dealt in the crap game, and sometimes watched the other games. There was definite evidence that the game of stud poker was played at least once on or about March 11, the date charged in the first count in the information; that blackjack was observed several times, and craps several times, with money.

After the leasing of the premises by Silver, partitions were altered in the premises so leased to suit the purposes of the new tenant. Certain doors were heavily encased in sheet-iron; peek-holes were cut through the walls from which a look-out could gain a view of those entering the outside room; one peek-hole

enabled the observer to look into the outside room and another peek-hole allowed the look-out to look into the narrow hallway between two iron doors. He could thus communicate with an outer door guard.

Appellant Silver, according to the evidence, was the man who ordered the peek-hole made with beveled edges so as to enable the look-out man to get a clear view of the prospective patrons. It was appellant Silver who ordered and directed all the work to be done. Appellant LeBow apparently was the floor manager for appellant Silver, and, during the alteration work, was also on the premises assisting in the supervision. Appellant Silver paid, by his own check, the amount due the contractor for the alteration work.

From all the evidence and the photographs introduced in evidence, it is disclosed that the premises occupied by the Far West Social Club were elaborately equipped for the purpose of conducting clandestine gambling games without discovery. There could have been no other purpose for the elaborate and intricate equipment of the premises.

The information charged conducting crap games on or about March 19. The proof on behalf of the state showed a game of craps played in the premises on March 17, 1926. On March 18 and 19, it appears that no games were discovered by the agents of the state on the premises. The premises were raided by officers of the state on March 19.

At that time, appellant Silver was apparently in proprietary control of the leased premises. The theory of the state was that, while appellant Silver was not personally present at the time of the discovery of the games of craps conducted in the premises between March 8 and March 17, it was he who actually owned the lease, had control of the leased premises, and that appellant LeBow was his assistant and visible man-

ager of the premises and Smith was an employee and look-out. Since Smith was acquitted, we have no further concern with him.

At the conclusion of the state's evidence, upon motion of appellants, the court dismissed the prosecution as to count one of the information, the poker game, but retained the prosecution as to the crap game.

The ten claims of error of appellants are argued under five groups. The first comprise assignments Nos. 1 and 2, to the effect that the information on which appellants were tried should have been dismissed because it was a prosecution in violation of their constitutional rights to a speedy trial, and was upon the same charge as the previous information which had been dismissed in the court below for lack of diligent prosecution.

It is true that the constitution, § 22, Art. I, guarantees the right to a speedy public trial by an impartial jury in the county in which the offense is alleged to have been committed; and that Rem. Comp. Stat., § 2312, provides for the dismissal of prosecutions which have not been postponed upon the application of the accused, if not brought to trial within sixty days after the information has been filed, unless good cause to the contrary is shown; and § 2315 prescribes that an order dismissing the prosecution under § 2312, etc., bars another prosecution for a misdemeanor or gross misdemeanor, but does not bar another prosecution for a felony.

Appellants were prosecuted in this case upon felony charges in both informations. It is true the first information was dismissed many months before the last information was filed, but there was another prosecution pending upon appeal to this court on which, if a conviction became final, it is to be assumed that the state would go no further. While that appeal

was pending, the state filed a new information. Apparently appellants were not brought to trial on the information on which a new trial was granted in the former appeal. But there was no bar under the statute by the dismissal of the former information. *State v. Deloria,* 129 Wash. 497, 225 Pac. 405.

It was also there held, in substance, that one of the duties of the courts is to see that a person charged with crime is fairly treated; that if the court, in the exercise of its discretion, thinks that a trial should not be had on a second or subsequent information, it is entirely within its power so to order and in this way overcome the evil of subsequently delayed prosecution. But the court could not say in that case from the record that the lower court had abused its discretion.

Nor can we, in this case, say that the trial court abused its discretion. Only one conviction will probably be had upon a felony charge within the period allowed by the statute of limitations. That conviction is for a gambling offense committed on or about March 19, 1926. Hence, we find no merit in the foregoing claim.

■ The next complaint of appellants is that the trial court permitted evidence of the conduct of the blackjack games on the same premises as the poker and crap games charged in the information.

The evidence was admissible, not to prove another crime or general gambling on the premises, but because it was part of *res gestae* and as showing the operation of the premises for general gambling purposes at or about the time alleged. The evidence of other gambling games, such as blackjack, which were described, also tended to prove guilty knowledge on the part of appellants. It was shown by the state that appellant LeBow was observed to go from one room to another

exercising general control over all the games and all the players. Our case, *State v. Kaukos,* 109 Wash. 20, 186 Pac. 269, is decisive of this question.

■ As to the connection of appellant LeBow with the premises and the gambling games operated therein, there can be little question under the evidence. The connection of appellant Silver was not so definitely and positively shown as that of appellant LeBow. However, we consider that there was sufficient evidence and inferences from the facts shown connecting appellant Silver with the lease and operation of the premises under the lease as a sort of invisible owner who was keeping as free from visible connection as possible, and yet was the directing chief. We think there was sufficient evidence for the jury to so find. See *State v. Kaukos, supra,* and *State v. Everitt,* 127 Wash. 265, 220 Pac. 797.

A somewhat similar situation was shown in the last cited case. Appellant in that case kept as free from visible connection with the gaming rooms as was possible. He also had an elaborate system of equipment and paraphernalia for protection from discovery. He was found guilty by a jury, and the conviction was affirmed by this court on evidence no stronger than that here as against Silver.

We conclude, therefore, that the third group of complaints on behalf of appellant Silver is not tenable.

■ The fourth group of assignments relates to statements made in the presence of the jury by the attorney for the state as to the previous trial and conviction of appellants. The last one referred to was concerning defendant Smith, who on this trial was acquitted. Manifestly, there could be no prejudice as to him. As to the first references to the former conviction, they were not only elicited by questions previously asked by counsel for appellants, but the jury were per-

emptorily charged to disregard such remarks. No prejudice can therefore be presumed.

The fifth group of assignments relates to the indorsement of the additional witnesses, which, under our statement herein of circumstances surrounding the application and the allowance, we think is also untenable. See *State v. Carpenter*, 56 Wash. 670, 106 Pac. 206.

We find no error justifying reversal. The convictions and judgments are affirmed.

TOLMAN, PARKER, and BEALS, JJ., concur.

FULLERTON, J., concurs in the result.