[No. 37374.   En Banc.   November 10, 1965.]

THE STATE OF WASHINGTON, *Respondent*, v. JOE CAMP, *Appellant.**

*John M. Warnock*, for appellant.

*E. Lloyd Meeds* and *Gerald R. Gates*, for respondent.

*Reported in 407 P.2d 824.

DONWORTH, J.—Appellant was charged with the crime of abduction by an information which contained the following allegations:

That he, the said Joe Camp, in the County of Snohomish, State of Washington, on or about the 12th day of April, 1963, without the consent of the person having legal custody of one Glenna May Penix, to-wit: her father, Kenneth Penix or her mother, Mrs. Jean Penix, wilfully, unlawfully and feloniously did take the same Glenna May Penix, then and there a female under the age of eighteen (18) years, to-wit: seventeen (17) years, for the purpose of marriage.

He pleaded not guilty and, after a trial before a jury, a verdict of guilty was returned. After his post-trial motions were heard and denied, he was sentenced pursuant to the mandatory provisions of RCW 9.79.050 to serve a maximum term of 10 years in the state penitentiary. The court suspended the sentence upon five conditions which were stated in the judgment and sentence as follows:

IT IS FURTHER CONSIDERED, ORDERED AND ADJUDGED by this court that the sentence be suspended upon the following terms and conditions:

1. That the defendant serve One (1) year in the Snohomish County Jail; said term to commence upon the date of the signing of this judgment.

2. That the defendant be under the charge of the Board of Prison Terms and Paroles and follow implicitly such instructions, rules, and regulations as may be adopted and promulgated by said Board for the conduct of the defendant during the whole term of the sentence herein imposed, that, Ten (10) years.

3. That the terms of probation herein imposed shall at all times be subject to revocation, modification and suspension by this court as provided by law.

4. That the defendant shall refrain from any contact in any manner with Glenna Mae Penix, a/k/a Glenna May Camp, during the sentence consisting of one year including contact by mail, telephone or otherwise.

5. That the defendant shall pay cost of the action within one year after release from County Jail.[1]

---

[1] No error has been assigned to the imposition of the terms and conditions on which the sentence was suspended. Rule on Appeal 43 (RCW

Upon his appeal to this court, appellant has made six assignments of error, three of which relate to certain rulings made by the court during the trial and three of which complain of the court's refusal to give three proposed instructions requested by him.

We shall briefly state the facts as shown by the state's evidence. Appellant did not take the stand and did not call any witnesses to testify on his behalf. Consequently, the only evidence for the jury to consider was the testimony of the state's five witnesses.

Glenna May Penix was born January 11, 1946, and at the time of her marriage to appellant was 17 years and 3 months old. Prior to the marriage, she resided with her parents in Everett on the same side of the street on which appellant resided. There was only one residence between their two houses.

For about a year prior to the marriage, Glenna had been employed by appellant to do bookkeeping work for him. She worked part of the time in appellant's garage and part of the time in his house.

Glenna's parents were acquainted with appellant and were aware of his desire to marry their daughter. Each of her parents testified at the trial that neither of them had ever consented to Glenna's marrying appellant prior to the time the marriage took place, although they had consented to their being engaged. They objected to Glenna's marrying until she became 18 years of age.

On the morning of April 12, 1963, Glenna told her parents that she was going down town with her girl friend to shop. They took a taxicab from her parents' home, and Glenna did not return. Later in the day, her father re-

vol. 0) provides in part: "No alleged error of the superior court will be considered by this court unless the same be definitely pointed out in the "assignments of error" in appallent's brief."

Rule on Appeal 46(13) (RCW vol. 0) relating to appeals in criminal cases provides: "The practice and procedure, except as in these rules otherwise provided, shall be, as nearly as possible, the same as in civil causes."

Accordingly, the terms and conditions quoted above are not before us for review and no further reference is made to them.

ceived a telephone call from appellant in which he stated that he and Glenna were married.

Appellant and Glenna were married by a justice of the peace at his law office in Burlington, Washington, on April 12, 1963. The record does not disclose how or with whom Glenna had traveled from Everett to Burlington. The justice testified that he had performed the ceremony, and that the contracting parties had furnished him a marriage license issued by the county auditor. He identified a certified copy of his return which was signed by him and by the contracting parties. This was admitted in evidence without objection.

The only other witnesses who testified at the trial (besides the parents and the justice) were two officers of the Everett police department. We do not consider it necessary to discuss their testimony since it has no bearing upon appellant's assignments of error.

■ Appellant first assigns error to the trial court's striking the negative answer of Glenna's father when asked by appellant's counsel, "Do you now have any objection to this marriage?" The trial court was correct in directing the jury to disregard the answer. The question asked for an immaterial answer. Appellant was charged with taking Glenna for the purpose of marriage on April 12, 1963, without the consent of her parents. If the jury found that he did so (as they evidently did), appellant was guilty of the crime charged. Whether either or both of her parents had any objection to the marriage at the time of trial (September 26, 1963) was immaterial. In such a case, parental consent may not be given nunc pro tunc for the purpose of furnishing the abductor with a defense which did not exist at the time of the marriage.

Next, appellant complains that the court erred in denying his motion for a continuance at the commencement of the trial because of a matter then pending in this court which he argues involved the same problems.

The proceeding referred to is *In re Penix*, 63 Wn.2d 977, 387 P.2d 371 (1963), which was an application by Joseph O. Camp (who is appellant herein) for a writ of certiorari

to review an order of the juvenile court entered June 6, 1963, declaring his wife to be a dependent child. In that proceeding, this court never had occasion to consider the merits because, on December 5, 1963, it ordered that the writ of certiorari be quashed for lack of jurisdiction.

We are unable to see what bearing the juvenile court proceeding had on the crime alleged to have been committed by appellant on April 12, 1963. Glenna was not a ward of the juvenile court on that date. Compare *State v. Speer*, 36 Wn.2d 15, 216 P.2d 203 (1950).

The trial court's stated reasons for denying the motion for continuance were, first, that it had not been timely made, and,

> Secondly, the motion is denied in addition on the ground that there is no showing that the defendant was deprived from seeking those witnesses he wished to utilize in the defense of his case for the purpose of discussing this case with them. All we have are oral statements not substantiated by any corroborating evidence or affidavits which would enable the State to rebut. We will now proceed with the trial.

We cannot say that there was any abuse of the trial court's discretion in denying appellant's motion for a continuance.

At the same pretrial hearing held in the trial judge's chambers on the day of the trial, appellant's counsel called the court's attention to an affidavit signed by Glenna's parents and filed by their own counsel, stating, in substance, that it was their desire that the charge of abduction against appellant be dismissed with prejudice and that no prosecution be had thereon. In denying appellant's motion for dismissal, the trial court said:

> Well, I am denying this motion for two reasons: Number one is that the sole discretion as to whether a motion for dismissal is made is based—in a criminal case—is based upon affidavits having to do with ends of justice best being served; and secondly, as I understand it, the complaining witness is a ward of the Court, am I correct in that Counsel? I should say, the girl involved here is a ward of the Court and any disposition concerning her person or even concerning any proceedings in which she may be involved must be performed subject to the ap-

proval of the Juvenile Court and she is a ward of the Court.

We agree with the trial court's first reason for denying the motion and hold that there was no abuse of discretion in denying the motion. In this connection, respondent invites our attention to RCW 10.46.090, which provides:

> The court may, either upon its own motion or upon application of the prosecuting attorney, and in furtherance of justice, order any criminal prosecution to be dismissed; but in such case the reason of the dismissal must be set forth in the order, which must be entered upon the record. No prosecuting attorney shall hereafter discontinue or abandon a prosecution except as provided in this section.

The state contends that, under this statute, only the prosecutor or the court, on its own motion, may cause the dismissal of a criminal action, and that no other person has standing to request such dismissal. We need not pass on this contention because, for the reason already stated, there is no merit in appellant's third assignment of error.

Next, we consider the three requested instructions, the refusal of which to give, appellant contends, constituted reversible error.

■ Appellant's requested instruction No. 1 would have instructed the jury that "if you find that the young woman [naming her] went to the defendant of her own volition, that is not a taking within the meaning of the statute." That a taking for the purpose of marriage need not be by force in order to come within the purview of RCW 9.79.050 was held by this court in *State v. Richards*, 88 Wash. 160, 152 Pac. 720 (1915), where it was said:

> By this statute, every person who shall take a female under the age of eighteen years for the purposes therein stated is guilty of the crime of abduction. The taking necessary to constitute the crime under the statute may be effected by persuasion, enticement, or inducement.

Appellant's second requested instruction read as follows:

> You are instructed that when a specific intent is required to make an act an offense, that the doing of act does not raise a presumption that it was done with specific

intent. And that because the defendant married a girl under the age of 18 years of age, against the dictates of the abduction statute does not mean that the defendant is guilty as charged. That intent must be proved beyond a reasonable doubt by the State in this case.

The foregoing is not a correct statement of the law. The matter of intent was properly covered by the trial court in its instruction No. 3, in which were specifically listed the essential elements of the crime charged which the state had the burden of proving to the satisfaction of the jury beyond a reasonable doubt. Appellant did not except to this instruction or to any other instruction given by the trial court.

To have given the following portion of the requested instruction, reading:

And that because the defendant married a girl under the age of 18 years of age, *against the dictates of the abduction statute* does not mean that the defendant is guilty as charged. (Italics ours.)

would have constituted a judicial repeal of RCW 9.79.050. It is directly contrary to the language of the statute defining the crime of abduction, and could have only confused the jury.

It is not incumbent upon the trial court to rewrite an incorrect statement of the law contained in a requested instruction. If such instruction is incorrect in any material particular, it is not error for the court to refuse to give it. *State v. Lutes*, 38 Wn.2d 475, 230 P.2d 786 (1951); *State v. Wilson*, 26 Wn.2d 468, 174 P.2d 553 (1946).

Requested instruction No. 3 contained erroneous statements of law regarding the matter of volition similar to that discussed above in connection with requested instruction No. 1. For the reasons there stated, the court did not err in refusing to give instruction No. 3.

We have considered all the assignments of error raised by appellant, and do not find that any prejudicial error has been committed by the trial court.

Appellant, with full knowledge that he did not have the consent of Glenna's parents to marry her, and that she

was under the age of 18 years, took her for the purpose of marriage. The jury so found after hearing the state's evidence (appellant presented none). The penalty fixed by the statute may be considered severe for the offense committed, but that is entirely a legislative matter, which is beyond the power of a court to change.

Under the circumstances shown in this case, appellant has been duly convicted after a fair trial, and the judgment and sentence of the trial court (being in compliance with the applicable statute) is hereby affirmed.

Nothing said in this opinion shall be construed as preventing the trial court from entertaining a motion made by either the state or by appellant to revoke, modify, delete or add to, or suspend, any of the terms and conditions imposed by the court relating to the suspension of its sentence. The trial court may exercise its discretion in passing on such motion and make such disposition thereof as in its judgment the facts presented appear to warrant.

OTT, HUNTER, HAMILTON and HALE, JJ., concur.

HILL, J. (concurring specially)—I concur in the majority opinion because to do otherwise would be to permit a hard case to make bad law. Because we personally disagree with a prosecutor and a trial judge as to whether a case should have been prosecuted or dismissed, does not make their determination an abuse of discretion.

I can agree with the dissent that their determination was perhaps unfortunate, but I cannot say that there has been an abuse of discretion or reversible error.

ROSELLINI, C. J. and WEAVER, J., concur with HILL, J.

FINLEY, J. (dissenting)—The melodramatic facets of this case may not be the major factor dispositive of it. However, the drama herein of human emotions—fact, fancy and foibles—is deserving of comment and explanation. The story (its setting, complications and implications) is revealed in two records: the record in this appeal and the record of a juvenile hearing, In re Penix, 63 Wn.2d 977, 387 P.2d 371 (1963).

Joe Camp, the defendant herein, was either 42 or 44 at the time of the alleged crime. He had employed Glenna May Penix as a bookkeeper. She was a junior high school dropout. Her records show that she did very poorly in school and failed to complete the eighth grade. After Glenna May had worked for Joe Camp for some time, romantic ideas or involvements came about. In March 1963, Glenna May and Camp told her parents that they were engaged and intended to marry. Parental reactions were limited apparently to a desire that the wedding be delayed until Glenna May was 18. The parents did not break up the engagement, nor did they try to stop their daughter from seeing Camp.

The plot thickened on March 9, 1963, when Officer Sylte and Officer Staniford, juvenile officers with the Everett Police Department, met with Joe Camp, Glenna May and her parents in the Penix home. The officers made themselves very explicit. They ordered Camp and Glenna May not to see each other unless they were in the presence of Glenna May's parents. The juvenile record indicates that the police gave these orders to Camp at the direction of Glenna May's parents. However, the record in this appeal indicates that the police undertook this activity because neighbors had complained about Camp and Glenna May embracing in a car in front of the Penix home. In any event, the order was given.

On April 12, 1963, Joe Camp and Glenna May did get married. That evening, Camp called Mr. Penix and told him that he and Glenna May were married. Camp also told Mr. Penix not to bother to call the police as there was nothing they could do. However, the authorities got wind of the marriage, and perhaps of the bellicose statement by Camp. They accepted the challenge apparently presented to them.

On April 18, 1963, just 6 days after the marriage, a complaint or a petition to declare Glenna May a dependent child was filed in the Juvenile Court. On April 19, 1963, Glenna May was ordered to be held in the detention facility of the Snohomish County Juvenile Court. On April 23,

1963, after a hearing at which the parents at least appeared to be in the complainant category, the court declared Glenna May to be a dependent child. Thereupon, on August 7, 1963, the prosecutor, who had also interrogated the witnesses at the juvenile hearing, filed the information charging Camp with abduction.

On September 26, 1963, Camp was brought to trial. By that time, Glenna May's parents had changed their minds. Through their own attorney they petitioned the court to dismiss the charges against Camp as they had decided to give the marriage a chance. The trial judge refused to dismiss the charges, giving the following reason:

> Well, I am denying this motion for two reasons: Number one is that the sole discretion as to whether a motion for dismissal is made is based—in a criminal case—is based upon affidavits having to do with ends of justice best being served; and secondly, as I understand it, the complaining witness is a ward of the Court, am I correct in that Counsel? I should say, the girl involved here is a ward of the Court and any disposition concerning her person or even concerning any proceedings in which she may be involved must be performed subject to the approval of the Juvenile Court and she is a ward of the Court.

We have often held that trial court "discretion exercised upon untenable grounds is an abuse of discretion." *Malfait v. Malfait*, 54 Wn.2d 413, 418, 341 P.2d 154 (1959); *Gibson v. Von Olnhausen*, 43 Wn.2d 803, 263 P.2d 954 (1953); *High v. High*, 41 Wn.2d 811, 252 P.2d 272 (1953); *Berol v. Berol*, 37 Wn.2d 380, 223 P.2d 1055 (1950); *Holm v. Holm*, 27 Wn.2d 456, 178 P.2d 725 (1947). RCW 10.46.090 provides:

> The *court may, either upon its own motion* or upon application of the prosecuting attorney, and in furtherance of justice, order any criminal prosecution to be dismissed; but in such case the reason of the dismissal must be set forth in the order, which must be entered upon the record. (Italics mine.)

Here the trial judge in effect refused to exercise his discretion. He first stated that there was an absence of the

required affidavits that a dismissal would be in the "furtherance of justice." However, the statute, first of all, does not require any such affidavits. Secondly, the parents had decided not to oppose, but to go right along in favoring their daughter's marriage to Camp, and *they no longer wanted him prosecuted.* Admittedly, their affidavits did not expressly state that the dismissal would be in the "furtherance of justice," but it takes no great insight to realize that this was their belief. In fact, at the trial *the parents testified repeatedly to the fact that they then had no objections to the marriage.* It appears that the experience, such as it was, and the convictions, such as they were, of the parents, who had observed the parties since the marriage, *were entirely ignored by the court.* Definitely, by the time of the trial, Mr. and Mrs. Penix were reconciled with their daughter and her husband. All of the parties wanted to give the marriage a chance—all except the authorities, who may have been still laboring under the challenge uttered or flung at them by Mr. Camp on the evening of his marriage to Glenna May.

The trial court's second reason for refusing to dismiss the charges is even more untenable. The trial judge stated (a) that Glenna May was a ward of the Juvenile Court, and, consequently, (b) "any proceedings in which she may be involved must be performed subject to the approval of the Juvenile Court and she is a ward of the Court." This, I must stress, is certainly "discretion exercised upon untenable grounds." *Malfait v. Malfait, supra.* Seemingly, the trial court was relying on the case of *State v. Speer*, 36 Wn.2d 15, 216 P.2d 203 (1950). In that case a girl of 14 was made a ward of the Juvenile Court and placed in the temporary custody of the mother of the defendant. The custody was expressly limited to providing for the physical needs of the girl, and the Juvenile Court reserved the right to make further additional orders concerning the welfare of the child. The defendant's mother, who had custody of the girl, later gave consent to her son, age 41, to marry the girl. This court held that the consent of the defendant's mother was insufficient. She had only a lim-

ited, temporary custody. The court held that only the Juvenile Court could have given the proper consent to the marriage, and, absent that consent, the defendant was guilty of abduction as charged under the statute.

The instant case is in no way similar to *Speer*. At the time of the marriage, Glenna May was entirely in the custody of her parents. She was made a ward of the Juvenile Court *because she got married*. Thus, the crime, if any, was committed against her parents, not against the peace and dignity of the Juvenile Court as in *Speer*. Therefore, it seems to me it was most significant that the parents petitioned the court to dismiss the charges against Camp, and it was highly immaterial whether or not the Juvenile Court authorities acquiesced in the petition to dismiss the charge against Camp.

Some might read the trial judge's second reason for refusing to dismiss to mean that he thought the prosecutor would have to join in the motion to dismiss. The prosecutor, however, was the moving party in the juvenile proceedings against Glenna May, and those proceedings were well known to the trial judge. Also, the prosecutor vigorously opposed the petition of the parents to dismiss the action. In any event, under RCW 10.46.090, quoted above, the trial judge does not have to rely on a motion of the prosecutor in order to dismiss a prosecution. In this, our law is different from the common law and the statutory law of many of our sister states. See *Power of Court to Enter Nolle Prosequi or Dismiss Prosecution*, 69 A.L.R. 240 (1930). Our legislature has authorized the trial judge to dismiss a criminal prosecution on his *own motion*, even though the prosecutor still wants to proceed. The legislature has thus protected against arbitrary action by the prosecutor; and by requiring reasons for the dismissal to be entered in the record, the legislature has also provided protection against arbitrary action by the trial judge. Here, the trial judge could have simply dismissed the case and entered the reason in the record that the parents no longer object to the marriage.

To summarize: It seems to me that the trial judge was in error when he refused to exercise his discretion on the petition of the parents to dismiss the prosecution against their son-in-law. He refused to exercise his discretion because (1) the affidavits from the parents failed to state expressly that "justice would be served" by the dismissal; and (2) the juvenile authorities, or (3) the prosecutor did not consent to the dismissal. To me these are "untenable grounds" involving abuse of discretion by the trial judge.

For the above reasons, I would reverse the conviction of the defendant and remand the case for dismissal on the present record. With the passage of time there are certainly new matters which the trial judge may wish to consider. Glenna May Camp is now past 19, and the defendant's counsel assured this court in oral argument that she is living happily with the defendant as his wife. In a recent case, also dealing with a trial court's exercise of discretion in the dismissal of charges, Judge Hill aptly quoted the United States Supreme Court, stating that the courts must have a "fastidious regard for the honor of the administration of justice." *State v. Satterlee*, 58 Wn.2d 92, 361 P.2d 168 (1961). He emphasized the role of the courts in effectuation of a reasonable balance between the rights of society and the rights of the individual. I think the trial judge should reconsider his action in the instant case in light of the wisdom expressed in *Satterlee.*

I can understand the motivation of the juvenile authorities and the prosecutor in trying to separate a 17-year-old girl from a 42 or 44-year-old man. Apparently, they were trying to protect the girl from what appeared to be a certain tragedy, and they were also trying to foster in this respect what appeared to be a generally settled and accepted social policy. Nevertheless, I am convinced that the authorities continued their crusade beyond the point of the state's proper and legitimate interest when they continued to prosecute Camp for a technical crime that was based on the lack of parents' consent—after the parents had changed their minds and had consented to the mar-

riage. When the parents dropped out of the crusade, the continued march of the authorities became oppression. This case turns on consent, and I feel that the authorities have concentrated on only certain facets or aspects of the factor of consent in this case. While it may have been true that there was a lack of parental consent at the time of the marriage, nevertheless, by the time things simmered down, the parents had consented. At this point, the crime against society, if any, was minimal, and a "fastidious regard for the honor of the administration of justice" could well have called for a dismissal of a charge of abduction.

I would reverse the conviction and dismiss the case for the reasons stated.

January 11, 1966. Petition for rehearing denied.