[No. 43505. En Banc. December 11, 1975.]

THE STATE OF WASHINGTON, *Appellant*, v. HERBERT CLINTON STARRISH, *Respondent*.

*Christopher T. Bayley, Prosecuting Attorney, David Boerner, Chief Criminal Deputy,* and *Philip Y. Killien, Senior Deputy,* for appellant.

*John Henry Browne, Chief Attorney,* and *Carl T. Hultman* of *Seattle-King County Public Defender,* for respondent.

FINLEY, J.—This is an appeal from an order of the Superior Court for King County dismissing a habitual criminal charge based upon CrR 8.3(b).

On August 8, 1974, the defendant, Starrish, entered a plea of guilty to second-degree assault while armed with a deadly weapon—a knife. The plaintiff, the State of Washington, filed a supplemental information charging Starrish with having attained the status of a habitual criminal. Starrish filed a motion to dismiss the supplemental information based upon CrR 8.3(b), alleging that this would be in the "interests of justice." The court granted the motion and entered an order dismissing the supplemental information, concluding that the interests of justice and the protection of the public would be served best if the court's discretion in sentencing and the parole board's discretion in fixing the term of imprisonment were not restricted by a habitual criminal conviction, which would require imposition of a mandatory minimum sentence.[1]

Prior to having entered a plea of guilty to second-degree assault in the instant case (which is equivalent to a conviction), Starrish had been convicted in the state of Washington of (1) second-degree burglary in 1956, (2) robbery in 1959, and (3) robbery in 1969.[2] The sentencing proceedings were stayed pending the resolution of this appeal.

CrR 8.3(b) provides:

The court on its own motion in the furtherance of

[1] RCW 9.95.040(3) provides:

"The following limitations are placed on the board of prison terms and paroles with regard to fixing the duration of confinement in certain cases, notwithstanding any provisions of law specifying a lesser sentence, to wit:

". . .

"(3) For a person convicted of being an habitual criminal within the meaning of the statute which provides for mandatory life imprisonment for such habitual criminals, the duration of confinement shall not be fixed at less than fifteen years. The board shall retain jurisdiction over such convicted person throughout his natural life unless the governor by appropriate executive action orders otherwise."

[2] Among other crimes, the record indicates that Starrish has been convicted in Alaska of petit larceny, grand larceny, and burglary.

justice, after notice and hearing, may dismiss any criminal prosecution and shall set forth its reasons in a written order.

Two basic issues are raised by this appeal: (1) Is a habitual criminal charge a "criminal prosecution" within the meaning of CrR 8.3(b)? (2) May the court dismiss a habitual criminal charge on equitable grounds absent a showing of arbitrary action or governmental misconduct? The answer to the first issue is yes, and no to the second issue.

■ With respect to the first issue, the State contends that a habitual criminal proceeding is not a criminal prosecution because all that remains before sentencing is the factual determination that Starrish has committed the requisite number of crimes. To support this proposition the State quotes from *State v. Pringle*, 83 Wn.2d 188, 190, 517 P.2d 192 (1973), where the court stated with reference to RCW 10.46.090, the predecessor to CrR 8.3(b):

> This statute, however, relates to the dismissal of a "criminal prosecution" and in no way authorizes a sentencing judge to modify a criminal information after the conclusion of the prosecution and after a valid plea of guilty has been entered.

From this the State reasons that a habitual criminal charge involves or creates a status and does not constitute a new crime or a criminal prosecution. As indicated above, we disagree and hold that a habitual criminal charge does constitute a "criminal prosecution" as that term is used in CrR 8.3(b).

This court previously has held that RCW 9.92.090,[3] which

---

[3]RCW 9.92.090 provides in part:

"Every person convicted in this state of any crime of which fraud or intent to defraud is an element, or of petit larceny, or of any felony, who shall previously have been twice convicted, whether in this state or elsewhere, of any crime which under the laws of this state would amount to a felony, or who shall previously have been four times convicted, whether in this state or elsewhere, of petit larceny, or of any misdemeanor or gross misdemeanor of which fraud or intent to defraud is an element, shall be punished by imprisonment in the state penitentiary for life."

provides for the habitual criminal proceeding, does not create a new crime but prescribes increased punishment for recidivists. *State v .Greene,* 75 Wn.2d 519, 521, 451 P.2d 926 (1969); *State v. Bryant,* 73 Wn.2d 168, 173, 437 P.2d 398 (1968). In *Greene* at page 521, the court commented that a habitual criminal proceeding is "a part of the original felony case," notwithstanding the characterization of this proceeding in *State v. Kelch,* 114 Wash. 601, 605, 195 P. 1023 (1921). It is not argued that the underlying felony in this case, second-degree assault, does not involve a criminal prosecution. Although the habitual criminal proceeding does not create or involve a distinct substantive offense,[4] it amplifies or enhances the criminal prosecution, *i.e.,* penalization, arising out of the underlying felony. It is innately a special type of "criminal prosecution." It is commenced by the filing of a supplemental information; and the accused has a right to trial by jury to determine whether there were previous convictions and whether the accused was the subject of those convictions.[5] Ultimately, the proceeding may result in increased incarceration. In fact, the Court of Appeals in *State v. Alexander,* 10 Wn. App. 942, 944, 521 P.2d 57 (1974), referred to this proceeding as a "habitual criminal prosecution."

*State v. Pringle, supra,* is distinguishable. Therein the defendant entered a plea of guilty to robbery while armed with a deadly weapon which would result in a mandatory minimum sentence. At the sentencing hearing the judge, after being informed that the defendant had no prior felonies and had committed only two rather innocuous misdemeanors, decided to delete the deadly weapon language in the finding portion of the judgment and sentence, thus obviating the need to impose the mandatory minimum sen-

---

[4]*State v. Lei,* 59 Wn.2d 1, 3, 365 P.2d 609 (1961).

[5]*State v. Domanski,* 5 Wn.2d 686, 106 P.2d 591 (1940); *State v. Furth,* 5 Wn.2d 1, 19, 104 P.2d 925 (1940).

tence provided by RCW 9.95.040(1).[6] In *Pringle* the State argued and we agreed that the sentencing judge acted without authority under RCW 10.46.090 in deleting the deadly weapon language. The court reasoned that the judge had acted without jurisdiction in relying on the statute as the source of authority to strike the language "where the prosecution had been terminated, and a voluntary plea of guilty had been entered by the defendant."[7] In the instant case the criminal prosecution has not ended. The defendant has a right to a trial by jury on the charge in the supplemental information filed by the prosecutor. The prosecution of the charge will continue until the jury has reached its verdict, at which time nothing remains to be done but the imposition of sentence.

The State further relies on *State v. Persinger*, 62 Wn.2d 362, 382 P.2d 497 (1963). In *Persinger* we reasoned that RCW 10.46.010, which provided for a right to speedy trial,[8] was designed to protect persons charged with *crimes* and did not apply to a habitual criminal proceeding because such a proceeding is not a crime. *Persinger* does not conflict with the conclusion we reach in the instant case. The supplemental information is not filed to prosecute a distinct crime; it is simply a supplemental proceeding initiated as a result of the original felony. Even though the right to speedy trial is not applicable to a habitual criminal charge, the proceeding remains a "criminal prosecution" as that term is used in CrR 8.3(b).

▪ The State finally contends that dismissal of the habitual criminal allegation separately and apart from the

---

[6] RCW 9.95.040(1) provides:

"The following limitations are placed on the board of prison terms and paroles with regard to fixing the duration of confinement in certain cases, notwithstanding any provisions of law specifying a lesser sentence, to wit:

"(1) For a person not previously convicted of a felony but armed with a deadly weapon at the time of the commission of his offense, the duration of confinement shall not be fixed at less than five years."

[7] *State v. Pringle*, 83 Wn.2d 188, 191, 517 P.2d 192 (1973).

[8] RCW 10.46.010 has been superseded by CrR 3.3.

underlying assault charge is not authorized by CrR 8.3(b). We disagree. In *State v. Sonneland*, 80 Wn.2d 343, 347, 494 P.2d 469 (1972), the court emphasized that RCW 10.46.090 is designed to "protect accused persons from arbitrary . . . actions of some prosecutors." To adopt the State's argument would be to defeat the very purpose for which the rule exists and would inappropriately restrict the function of CrR 8.3(b). Accordingly, the court does have the authority to dismiss a habitual criminal charge independently of other criminal allegations *if done for the purposes within the ambit of the authority* vested in the trial court *under CrR 8.3(b)*.

■■ We now treat the second issue which is whether a habitual criminal charge may be dismissed on equitable grounds absent a showing of arbitrary action or governmental misconduct. The State's basic position is that CrR 8.3(b) is designed to protect against arbitrary action or governmental misconduct and not to grant courts the authority to substitute their judgment for that of the prosecutor. We agree.

Starrish contends that since this issue was not raised at the trial level, it may not be considered on appeal. This argument lacks merit as the record is replete with argument presented to the trial judge indicating that he did not have the authority under the rule to dismiss the charge *absent a showing* of arbitrary action or governmental misconduct.

Starrish claims that since the court's written reasons for dismissal were supported by substantial evidence, the court is precluded from overturning the factual findings on appeal. The issue is not one of fact, but involves a conclusion of law. The trial court erred as a matter of law in its conclusion that the habitual criminal charge should be dismissed. There is no evidence in the record of governmental misconduct or arbitrary action of the type historically regarded by this court as sufficient to support a dismissal of a

criminal charge.[9] Our case law clearly requires a showing of governmental misconduct or arbitrary action by the trial judge or prosecutor in order to dismiss a habitual criminal charge under CrR 8.3(b). Starrish's arguments to the contrary are without merit.

 Starrish finally argues that even if a showing of misconduct is required this prerequisite was met because of the failure of the Department of Social and Health Services to treat his alcoholic problem while he was subject to its control as required by RCW 72.08.101.[10] This statute requires the director of institutions to establish programs for convicted persons to correct or rehabilitate "undesirable behavior problems." The failure of the director of institutions to establish programs to correct Starrish's penchant to consume alcohol does not constitute the type of governmental misconduct sufficient to bring into play the authority to dismiss criminal charges under the provisions of CrR 8.3(b). This provision requires the exercise of judicial discretion limited as indicated herein, relative to the dismissal of criminal charges.[11] It operates on the periphery between

---

[9]*E.g., State v. Sonneland,* 80 Wn.2d 343, 494 P.2d 469 (1972) (an amended information charging defendant with a felony after the prosecutor had agreed to charge him with a lesser crime in exchange for information constituted arbitrary action and was properly dismissed); *State v. Cory,* 62 Wn.2d 371, 382 P.2d 1019, 5 A.L.R.3d 1352 (1963) (information dismissed after the court found that eavesdropping upon an attorney-client conference violated the right to counsel); *State v. Satterlee,* 58 Wn.2d 92, 94, 361 P.2d 168 (1961) (dismissal of an information charging the defendant again for a crime for which he already had pleaded guilty and had served the maximum sentence was consistent with the court's "fastidious regard for the honor of the administration of justice").

[10]RCW 72.08.101 provides:

"The director of institutions shall provide for the establishment of programs and procedures for convicted persons at the state penitentiary, which are designed to be corrective, rehabilitative and reformative of the undesirable behavior problems of such persons, as distinguished from programs and procedures essentially penal in nature."

[11]This case illustrates a possible or potential deficiency in the habitual criminal statute, *i.e.,* it does not take into account the individual characteristics or potential of convicted persons relative to possible rehabilitation.

Judge Horowitz reasoned that the public's need for protection, even

the expectations of the public relative to the protection of its interests and certain individual rights which are protected by the court's fastidious regard for the administration of justice.

We find that the court's dismissal of the charge constituted an abuse of discretion because there was no evidence of arbitrary action or governmental misconduct.

The order of the court dismissing the supplemental information should be reversed, and the habitual criminal proceeding should be reinstated.

It is so ordered.

STAFFORD, C.J., and HUNTER, HAMILTON, WRIGHT, and BRACHTENBACH, JJ., concur.

UTTER, J. (dissenting)—I agree with the majority that a habitual criminal charge is a "criminal prosecution" within the meaning of CrR 8.3(b). I cannot accept its conclusion that a showing of governmental misconduct or arbitrariness is prerequisite to the dismissal of such a prosecution under that rule. Our prior cases, and those from other states with similar provisions, clearly establish that CrR 8.3(b) does precisely what it purports to do: it gives trial courts the

---

absent the habitual criminal charge, would be met because Starrish would be incarcerated as a result of the assault conviction and would be subject to the parole board until 2009, at which time the defendant would be 75 years old. A letter written by Warden B. J. Rhay of the Washington State Penitentiary also weighed heavily in the trial court's decision to dismiss the charge. Warden Rhay stated that Starrish was "more of [a] habitual drunk than [a] habitual criminal," and that his rehabilitation would depend entirely upon treatment for his alcoholism.

Successful treatment of alcoholic addiction is perhaps somewhat dubious at best, but there are people who respond and who are capable of rehabilitation. It seems obvious that both the warden and the trial judge were of the opinion that Starrish would respond affirmatively to treatment. Based upon this assumption the trial judge ordered the dismissal of the charge, rather than have it preclude possible treatment and rehabilitation.

The problem presented to the trial judge and this court cannot be resolved under CrR 8.3(b) and the rule making power of this court. Any solution of the problem is a matter of substantive law, and can only be addressed, considered, and possibly resolved by legislative action.

power to dismiss a criminal charge whenever the circumstances call for it "in the furtherance of justice." I believe the majority's disposition of this case, if extended beyond the facts, unjustifiably narrows the scope of this rule and unduly interferes with the broad discretion we have previously afforded trial courts in exercising the power it vests in them.

Relatively few cases have interpreted the language of CrR 8.3(b) in the near century it and its predecessor statute (RCW 10.46.090) have been in effect. Those cases have established that it authorizes dismissal not only in cases of official misconduct, but whenever a court's " 'fastidious regard for the honor of the administration of justice' " requires it. *State v. Satterlee*, 58 Wn.2d 92, 94, 361 P.2d 168 (1961), quoting *Communist Party of United States v. Subversive Activities Control Bd.*, 351 U.S. 115, 124, 100 L. Ed. 1003, 76 S. Ct. 663 (1956). Surely, "[o]ne of the purposes of [the rule] is to protect accused persons from arbitrary, albeit infrequent, actions of some prosecutors." *State v. Sonneland*, 80 Wn.2d 343, 346-47, 494 P.2d 469 (1972). (Italics mine.) But that is not its *only* purpose.

We made this clear in *State v. Satterlee, supra*, by affirming the dismissal of a robbery charge which, we found, the prosecution was fully within its rights in pressing despite the defendant's claim of double jeopardy. No governmental misconduct was involved, but we held that the court was justified in dismissing the charge in the interests of justice and in light of its duty " 'to see that a person charged with crime is fairly treated.' " *State v. Satterlee, supra* at 94, quoting *State v. Silver*, 152 Wash. 686, 694, 279 P. 82 (1929). In *no* case have we reversed a dismissal under CrR 8.3(b) or its predecessor on the grounds seemingly adopted by the majority today, that only prosecutorial misconduct justifies use of the power it gives trial courts. To the contrary, our decisions consistently indicate that the provisions of CrR 8.3(b) are a tool broadly available to courts in the performance of their "role . . . in effec-

tuation of a reasonable balance between the rights of society and the rights of the individual." *State v. Camp*, 67 Wn.2d 363, 375, 407 P.2d 824 (1965) (Finley, J., dissenting); *see State v. Satterlee, supra* at 94; *State v. Deloria*, 129 Wash. 497, 501, 225 P. 405 (1924); *State v. Hansen*, 10 Wash. 235, 38 P. 1023 (1894).

Our cases also establish that a trial court has wide discretion in deciding whether a dismissal is or is not warranted under the principles of fairness and justice embodied in this rule (CrR 8.3(b)). Only twice before have we overturned a trial court's decision either to dismiss or not to dismiss a prosecution under this rule or its predecessors. In *Seattle v. Mathewson*, 194 Wash. 350, 78 P.2d 168 (1938) we reversed a dismissal based solely on the trial court's erroneous legal conclusion that the defendant had been once in jeopardy, and in *State v. Satterlee, supra* at 94, we reversed as to one of the two charges the trial court had dismissed because the state had a legitimate interest in the prosecution and no reason was given why the defendant had any valid interest in avoiding it. In *every other appeal* we have heard we have upheld the trial court's exercise of the discretion vested in it by CrR 8.3(b) or its predecessor. *State v. Sonneland, supra*; *State v. Weiss*, 73 Wn.2d 372, 438 P.2d 610 (1968); *State v. La Vine*, 68 Wn.2d 83, 86, 411 P.2d 436 (1966); *State v. Camp*, 67 Wn.2d 363, 407 P.2d 824 (1965); *State v. Deloria, supra*; *State v. Hansen, supra*; *State v. Anderson*, 12 Wn. App. 171, 528 P.2d 1003 (1974).[12] It is thus well established that the power to dismiss "is

[12]In *State v. Cory*, 62 Wn.2d 371, 382 P.2d 1019, 5 A.L.R.3d 1352 (1963), we reversed a criminal conviction because it was tainted by flagrant police misconduct, and ordered that the prosecution be dismissed with prejudice. Nowhere in that case was RCW 10.46.090 mentioned, however, and our dismissal order was apparently based simply on our inherent power to fashion appropriate remedies for constitutional violations. Later cases made it clear that, under that power, just as under CrR 8.3(b), the decision to dismiss or not dismiss is largely discretionary with the trial court. *State v. Baker*, 78 Wn.2d 327, 332-33, 474 P.2d 254 (1970).

discretionary with the trial court, reviewable only for manifest abuse of discretion." *State v. Anderson, supra* at 175.

Several other states have or have had rules or statutes similar or identical to CrR 8.3(b).[13] In every one of them in which such provisions have been interpreted, the courts have recognized these same two principles: that the rules authorize trial courts to dismiss prosecutions for *any* reason consistent with the "furtherance of justice," and that trial courts' exercise of this authority is discretionary and reversible only for manifest abuse. It is consistently held that CrR 8.3(b) and similar statutes are to allow a trial court

> to dismiss a case whenever in its judgment the furtherance of justice may be subserved thereby. It may be that the evidence would warrant a conviction, but, if the court is of the opinion that such conviction would be unjust and that the best interest of society would be subserved by the dismissal of a case, the statute . . . authorizes such action. It must never be forgotten that the enforcement of justice is the sole object of the law.

*State v. McDonald*, 10 Okla. Crim. 413, 416, 137 P. 362 (1914).[14] *No* court in *any* jurisdiction has held, as the majority does in this case, that dismissals under these rules are proper only in cases of governmental misconduct.

The power created by CrR 8.3(b) and like provisions is essentially a power to do equity. The trial court in exercising it must balance the interests of society in prosecuting criminals against the interests of individuals in unusual

---

[13] *See, e.g.,* former Ariz. Rev. Stat. Ann. rule 239 (1956); Cal. Penal Code § 1385 (West 1970); Idaho Code Ann. § 19-3504 (1948); Iowa Code Ann. § 795.5 (1950); Minn. Stat. Ann. § 631.21 (1947); Mont. Rev. Codes Ann. § 95-1703 (1969); N.Y. Code Crim. Proc. § 210.40 (McKinney 1971); former N.D. Cent. Code § 29-18-04 (1960); Okla. Stat. Ann. 22 § 815 (1969); Ore. Rev. Stat. § 135.755 (1974); Utah Code Ann. § 77-51-4 (1953).

[14] *Cf. People v. Quill,* 11 Misc. 2d 512, 513, 177 N.Y.S.2d 380 (1958): "The power to discontinue prosecution of a crime vested . . . in the court has little or nothing to do with the legal or factual merits of the charge. Nor is it concerned with the guilt or innocence of the defendant. Such a dismissal, is concerned, as the statute states, solely with principles of justice."

situations to avoid prosecution. *People v. Orin,* 13 Cal. 3d 937, 533 P.2d 193, 120 Cal. Rptr. 65, 71 (1975); *People v. Superior Court,* 69 Cal. 2d 491, 505, 446 P.2d 138, 72 Cal. Rptr. 330 (1968); *State ex rel. Anderson v. Gile,* 119 Mont. 182, 187, 172 P.2d 583 (1946); *State v. Satterlee, supra* at 94-95. "[I]n appropriate but rare circumstances" where strict enforcement of the law would be unjustified and unduly oppressive, these rules empower the court "to allow the letter of the law gracefully and charitably to succumb to the spirit of justice." *People v. Davis,* 55 Misc. 2d 656, 659, 286 N.Y.S.2d 396 (1967).

The factors which determine whether a particular case presents the kind of "rare circumstances" in which termination of a prosecution is appropriate are too numerous and nebulous to permit the kind of narrow definition the majority attempts to give them. A trial court must be given considerable leeway in deciding, on the basis of all the information before it, whether a dismissal would be "in the furtherance of justice." This does not mean the power vested by CrR 8.3(b) is unlimited, however. Trial courts' discretion, "while broad, is by no means absolute." *People v. Orin, supra* at 945. Decisions to dismiss or not to dismiss are subject to review on appeal, and if a prosecution is ordered dismissed the reason of the dismissal must be set forth in the order, which must be entered on the record. CrR 8.3(b). This provides a substantial safeguard against any possible judicial arbitrariness or caprice. *People v. Ritchie,* 17 Cal. App. 3d 1098, 1105, 95 Cal. Rptr. 462 (2d Dist. 1971); *State v. Camp, supra* at 374 (Finley, J., dissenting). Where the trial court's decision is based on considerations that are clearly improper (*see, e.g., People v. Winters,* 171 Cal. App. 2d 876, 342 P.2d 538 (Super. Ct. App. Dep't 1959)), or erroneous (*Seattle v. Mathewson, supra*), or on no cognizable reason at all (*e.g., People v. Orin, supra; State v. Satterlee, supra*), its error can be discovered and reversed. But so long as the reason for the dismissal is set out and is "one which would motivate a reasonable judge,"

the trial court's order should be upheld. *People v. Orin,* *supra;* *People v. Curtiss,* 4 Cal. App. 3d 123, 126, 84 Cal. Rptr. 106 (2d Dist. 1970).

The reason given by the trial court in this case for dismissing the habitual criminal charge against respondent Starrish was essentially that the purpose of the habitual criminal statute would not be served by trying him under it. Specifically, it found, on the basis of substantial evidence (1) that the state's interest in restraining respondent was satisfied by the prior adjudication that subjected him to parole board control until he is 75 years old; and (2) that society's interest in having him stop his antisocial behavior would be best served by alcoholism treatment, which he was amenable to but could not receive if adjudicated a habitual criminal. As the majority acknowledges in footnote 11, these considerations clearly could lead a "reasonable judge" to the conclusion that this dismissal was appropriate and in the interests of justice.

In a number of cases courts have upheld dismissals based on determinations that prosecution under a statute would not best serve the purposes for which the statute was enacted, and would adversely affect the defendant "beyond the point of the state's proper and legitimate interest." *State v. Camp, supra* at 375 (Finley, J., dissenting). In *People v. Quill,* 11 Misc. 2d 512, 177 N.Y.S.2d 380 (1958), for example, the court held that the purpose of the criminal libel law, to avert violent retaliation by the victims of slander, would not be fulfilled by prosecution against the wishes of the defendant's victim. It therefore dismissed the charge. *People v. Superior Court,* 20 Cal. App. 3d 684, 687, 97 Cal. Rptr. 886 (2d Dist. 1971), affirmed a dismissal ordered because a conviction could only have increased the minimum term of the sentence the defendant was serving for another offense and would have "contributed nothing to the over-all enforcement of the criminal law." *See also* *People v. Cina,* 41 Cal. App. 3d 136, 138, 115 Cal. Rptr. 758 (2d Dist. 1974); *People v. Davis, supra.*

On the basis of similar reasoning, the courts in California

have upheld precisely the kind of action the trial court took here. *People v. Burke*, 47 Cal. 2d 45, 301 P.2d 241 (1956), held that the dismissal of a prior offense allegation was proper under Cal. Penal Code § 1385 (on which the predecessor statutes to CrR 8.3(b) were modeled) where the interests of justice and the purposes of the habitual offender law would not be served by a conviction thereunder. Despite much litigation and attempted legislative encroachments, *Burke* remains the law in California. *People v. Dorsey*, 28 Cal. App. 3d 15, 104 Cal. Rptr. 326 (4th Dist. 1972); cf. *People v. Tenorio*, 3 Cal. 3d 89, 473 P.2d 993, 89 Cal. Rptr. 249 (1970). I would follow it in this state.

Habitual criminal adjudications are essentially sentencing proceedings, not distinct prosecutions. *State v. Bryant*, 73 Wn.2d 168, 437 P.2d 398 (1968); *Blake v. Mahoney*, 9 Wn.2d 110, 113 P.2d 1028 (1941). A trial court's discretion in sentencing is and must be particularly broad. *People v. Dorsey, supra*; *State v. Birdwell*, 6 Wn. App. 284, 492 P.2d 249 (1972). The determination that a habitual criminal prosecution should be dismissed does not deprive the state of the power to incarcerate or control a criminal defendant and therefore does not adversely affect the state's interests as strongly as does the dismissal of an original criminal prosecution. Cf. *State v. Satterlee*, 58 Wn.2d 92, 95, 361 P.2d 168 (1961). For these reasons the context of habitual criminal prosecutions would seem to be one in which the free exercise of the power to act "in the furtherance of justice" afforded by CrR 8.3(b) is particularly appropriate.

Statutes like CrR 8.3(b) transfer to the court part of the prosecutors' traditionally unbridled discretion to control criminal prosecutions. *State v. McDonald*, 10 Okla. Crim. 413, 415, 137 P. 362, 364 (1914); *Timmins v. Hale*, 122 Ore. 24, 42, 256 P. 770 (1927); F. Miller, *Prosecution; The Decision to Charge a Suspect With a Crime* 335 (1969). "[T]he court, for the purposes of the order of dismissal, takes charge of the prosecution and acts for the People." *People v. Superior Court*, 202 Cal. App. 2d 850, 854, 21 Cal. Rptr. 178 (1st Dist. 1962). The prosecutor retains the power to

determine whether a habitual criminal charge, or any other charge, will be filed and pressed. *State v. Nixon*, 10 Wn. App. 355, 517 P.2d 212 (1973). But CrR 8.3(b) makes the courts something more than the passive instruments of prosecutorial policies.

Courts always have the authority to do justice, and CrR 8.3(b) explicitly recognizes that authority in the context of unjustified or unfair criminal prosecutions. It places the responsibility to decide what are the interests of justice on the court, where it should be.

> [T]he district attorney cannot be regarded as impartial. He is essentially an advocate who, believing in the justice of his cause, is seeking conviction and punishment of the accused. To make him also the court of last resort as to what punishment should be imposed, without any impartial tribunal to review his decision in the matter of sentencing, seems to me to do violence to our concept of constitutional government, and offends our oft repeated and proud boast that we are a government of law and not of men.

*People v. Sidener*, 58 Cal. 2d 645, 674-75, 375 P.2d 641, 25 Cal. Rptr. 697 (1962) (White, J., dissenting).

CrR 8.3(b) insures that the broad discretion of prosecutors and the rigidity of aggravated sentencing laws will not combine to reduce judges to the status of mere clerks assigned to stamp and file the decisions of other agencies of government. It is too important to be so tightly confined as the majority's decision renders it. It should be read as being as broad and flexible as the principles of justice to which it refers, and against which exercise of judicial power should always be measured. There is no intimation in this record that the judge acted other than in a careful, considered manner. He received statements from eight independent witnesses, unrelated to the respondent, urging dismissal of the charge. These included a former president of the Seattle School Board and the victim of respondent's latest criminal act.

For these reasons I would follow the overwhelming weight of authority and hold that the power to dismiss a

criminal case under CrR 8.3(b) is not restricted to situations involving prosecutorial misconduct. I would further hold that the discretion that rule vests in trial courts is broad and was not abused here. I believe that the action taken by the court below was proper and consistent with "the furtherance of justice." I would affirm its judgment.

I dissent.

ROSELLINI and HOROWITZ, JJ., concur with UTTER, J.

Petition for rehearing denied January 29, 1976.