The United States v. Abel Turner.

Indictment in the circuit court of North Carolina for the forgery of, and an attempt to pass, &c. a certain paper writing in imitation of, and purporting to be a bill or note issued by the president, directors and company of the Bank of the United States, founded on the eighteenth section of the act of 1816, establishing the Bank of the United States. The note was signed with the name of John Huske, who had not been at any time president of the Bank of the United States, but who, at the time of the date of the counterfeit, was the president of the office of discount at Fayetteville; and was countersigned by the name of John W. Sandford, who at no time was cashier of the mother bank, but was at the said date cashier of the said office of discount and deposit. Held, that this was an offence within the provisions of the law.

It is clear that the policy of the act extends to the case. The object is to guard the public from false and counterfeit paper, purporting on its face to be issued by the bank. It could not be presumed that persons in general could be cognizant of the fact who, at particular periods, were the president and cashier of the bank. They were officers liable to be removed at the pleasure of the directors, and the times of their appointment or removal, or even their names, could not ordinarily be within the knowledge of the body of the citizens. The public mischief would be equally great, whether the names were those of the genuine officers, or of fictitious or unauthorized persons, and ordinary diligence would not protect them against imposition.

ON a certificate of division from the circuit court of the United States for the district of North Carolina.

The defendant, Abel Turner, was indicted at May term 1832, in the circuit court, under the eighteenth section of the act, incorporating the Bank of the United States, passed in April 1816.

The indictment contained four counts.

The first count charged the defendant with having forged and counterfeited a bill or note issued by the orders of the president, directors and company of the Bank of the United States, the tenor of which said false, forged and counterfeited paper writing is as follows, to wit, " the president, directors and company of the Bank of the United States promise to pay twenty dollars, on demand, at their office of discount and de-

posit, in Fayetteville, to the order of D. Anderson, cashier thereof, Philadelphia, the 4th of July 1827, John W. Sandford, cashier, John Huske, president," with intent to defraud the president, directors and company of the Bank of the United States, against the form of the act of congress, &c.

The second count charged the defendant with an attempt to pass the said note, describing it in the same form, knowing it to be forged, with intent to defraud the Bank of the United States.

The third count charged the offence of passing, uttering and publishing the same note, with intent to defraud the bank.

The fourth and fifth counts charged the defendant with an attempt to pass, and with having passed the note to one Elliott, with intent to defraud him. The note was described in these counts in the same form and terms as in the first count.

The jury found the defendant guilty on the fourth and fifth counts, and not guilty as to the residue.

Upon the trial of the cause it occurred as a question, whether the attempt to pass the counterfeit bill, in the indictment mentioned, knowing the same to be counterfeit, the said bill being signed with the name of John Huske, who had not, at any time, been president of the Bank of the United States, but at the time of the date of the said counterfeit bill was the president of the office of discount and deposit of the Bank of the United States at Fayetteville, and countersigned with the name of John W. Sandford, who at no time was cashier of the Bank of the United States, but was, at the date aforesaid, cashier of the said office of discount and deposit, was an offence within the provisions of the act entitled an act to incorporate the subscribers to the Bank of the United States: upon which question, the judges, being divided in opinion, ordered that the same should be certified to the supreme court of the United States for the opinion of that court.

The case was argued by the attorney-general, for the United States ; no counsel appeared for the defendant.

The attorney-general stated that the note described in the indictment, was in all respects the same as a note of the mother bank, excepting the signatures of the president and cash-

[United States v. Turner.]

ier of the bank.    Instead of those signatures, the names of the president and cashier of the branch bank at Fayetteville were affixed to the note.    The question is, whether this bill came within the description in the eighteenth section of the act incorporating the bank, which punishes the offence charged as counterfeiting a bill or note issued by order of the bank.    The question turns upon the interpretation of the word " purport" in the section.    If the paper purports to be a bill or note of the bank it is enough; although it may not be signed by the proper officers of the bank.

The cases which have been decided in England fully maintain this position.    They are found in 2 Russell on Crimes, 338, 340, 342, 344, 345, 346, 363, 365, 366, 456, 470, 471; and in 10 Petersdorf's Abridg. 55, 56.

Mr Justice STORY delivered the opinion of the Court.

This cause comes before the court upon a certificate of division of opinion of the judges of the circuit court for the district of North Carolina.    The defendant, Abel Turner, was indicted for the forgery of, and an attempt to pass, &c. a certain paper writing in imitation of, and purporting to be a bill or note issued by the president, directors and company of the Bank of the United States.    The indictment contained several counts, all founded upon the eighteenth section of the act of the 10th of April 1816, ch. 44, establishing the Bank of the United States.    Upon the trial of the cause it occurred as a question, whether the attempt to pass the counterfeit bill in the indictment mentioned, knowing the same to be counterfeit, the said bill being signed with the name of John Huske, who had not at any time been president of the Bank of the United States, but at the time of the date of the said counterfeit bill was the president of the office of discount and deposit of the Bank of the United States at Fayetteville, and countersigned by the name of John W. Sandford, who at no time was cashier of the Bank of the United States, but was, at the date aforesaid, cashier of the said office of discount and deposit, was an offence within the provisions of the act.    Upon this question the court, being divided in opinion, ordered the same to be certified to this court.

[United States v. Turner.]

The bill or note itself is not set forth in haec verba; except in the count on which the question arose, and which charges that the defendant, with force and arms, &c. " feloniously did attempt to pass to one S. E. as and for a true and good bill or note, a certain false, forged and counterfeit paper writing, the tenor of which, &c. is as follows, ' the president, directors and company of the Bank of the United States promise to pay twenty dollars on demand, at their office of discount and deposit in Fayetteville, to the order of D. Anderson, cashier thereof, Philadelphia, the 4th of July 1827, John W. Sandford, cashier, John Huske, president,' with intent to defraud the president, directors and company of the Bank of the United States." The bill therefore purports on its face to be signed by persons who are respectively president and cashier of the bank.

One of the fundamental articles of the charter (sect. 11, art. 12) declares that the bills and notes which may be issued by order of the corporation, signed by the president and countersigned by the cashier, promising the payment of money to any person or persons, his, her or their order, or to bearer, shall be binding and obligatory on the same. So that the present counterfeit bill purports to be signed by officers, who were the proper officers to sign the genuine bills of the bank.

The persons named in the counterfeit bill not being in fact the president and cashier, although so called; the question arises, whether the party is liable to indictment for an attempt to pass it, under the eighteenth section of the act of 1816.

We are of opinion, that he is, within the words and true intent and meaning of the act. The words of the act are, " if any person shall falsely make, &c., or cause or procure to be falsely made, &c., or willingly aid or assist in falsely making, &c., any bill or note in imitation of, or purporting to be a bill or note issued by order of the president, directors and company of the said bank, &c. &c.; or shall pass, utter or publish, or attempt to pass, utter or publish as true any false, &c. bill or note, purporting to be a bill or note issued by the order of the president, directors and company of the said bank, &c., knowing the same to be falsely forged or counterfeited, &c., every such person, &c. &c." The case, therefore, falls directly within the terms of the act. It is an attempt to pass a false

bill or note as true, purporting to be a bill or note issued by the order of the president, directors and company; for the word " purport" imports what appears on the face of the instrument. Jones's Case, Douglas, 802; 2 Russ_ll on Crimes, b. 4, ch. 32, sec. 1, p. 345, 346, 2d edition; Id. 363 to 367. The preceding clause of the section very clearly shows this to be the sense of the word in this connexion/ It is there said, if any person shall falsely make, &c. any bill " *in imitation of* or *purporting to be a bill*," &c. where the words " in imitation of" properly refer to counterfeiting a genuine bill, made by the proper, authorized officers of the bank; and the words " or purporting to be," properly refer to a counterfeit bill, which on its face appears to be signed by the proper officers. In the view of the act then, it is wholly immaterial whether the bill attempted to be passed be signed in the name of real or fictitious persons, or whether it would, if genuine, be binding on the bank or not.

And it is equally clear, that the policy of the act extends to the case. The object is to guard the public from false and counterfeit paper, purporting on its face to be issued by the bank. It could not be presumed that persons in general would be cognizant of the fact, who at particular periods were the president and cashier of the bank. They were officers liable to be removed at the pleasure of the directors; and the times of their appointment or removal, or even their names, could not ordinarily be within the knowledge of the body of the citizens. The public mischief would be equally great, whether the names were those of the genuine officers, or of fictitious or unauthorized persons; and ordinary diligence could not protect them against imposition. 2 East's P. C. ch. 19, sec. 44; p. 950; 2 Russell on Crimes, b. 4, ch. 32, sec. 1, p. 341, 2d edition.

Upon examining the English authorities upon the subject of forgery and the utterance of counterfeit paper, they appear to us fully to justify and support a similar doctrine. It is, for instance, clearly settled, that the making of a false instrument, which is the subject of forgery, with a fraudulent intent, although in the name of a non-existing person, is as much a forgery as if it had been made in the name of a person known to exist, and to whom credit was due. 2 Russell on Crimes,

b. 4, ch. 32, sec. 1, 2d edition, p. 327 to 333, and the cases there cited; Id. 470, 474; 2 East, P. Cr. ch. 19, sec. 38, p. 940. Nor is it material whether a forged instrument be made in such a manner, as that if in truth it were such as it is counterfeited for, it would be of validity or not. This was decided as long ago as Deakins's case, 1 Siderf. Rep. 142; 1 Hawk. Pl. Cr. ch. 70, sec. 7; 2 East, P. C. ch. 19, sec. 43, p. 948. Nor is it any answer to the charge of forgery, that the instrument is not available, by reason of some collateral objection not appearing upon the face of it. 2 Russell on Crimes, b. 4, ch. 32, sec. 1, 2d edition, p. 337 to 341, Id. 470 to 474.

So that upon the words and policy of the act itself, as well as upon the footing of authority, we are of opinion, that the offence stated in the division of opinion is within the act of 1816. And we shall accordingly certify this to the circuit court.

This cause came on to be heard on the transcript of the record from the circuit court of the United States for the district of North Carolina, and on the question and point on which the judges of the said circuit court were opposed in opinion, and which was certified to this court for its opinion, agreeably to the act of congress in such case made and provided, and was argued by counsel: on consideration whereof, it is the opinion of this court, that the attempt to pass the counterfeit bill in the indictment in the proceedings mentioned under the circumstances in the said certificate of division of opinion mentioned, is an offence within the provisions of the act of congress stated in the same certificate: whereupon, it is adjudged and ordered by the court, that it be certified to the said circuit court for the district of North Carolina, that the attempt to pass the counterfeit bill in the indictment in the proceedings mentioned under the circumstances in the said certificate of division of opinion mentioned, is an offence within the provisions of the act of congress stated in the same certificate.