[No. 31497. Department One. April 26, 1951.]

THE STATE OF WASHINGTON, *Respondent,* v. ERNEST LUTES, *Appellant.*[1]

[1]Reported in 230 P. (2d) 786.

*Will Lanning* and *Bill Lanning,* for appellant.

*Charles O. Carroll* and *John E. Prim,* for respondent.

FINLEY, J.—The appellant, Ernest Lutes, was charged with first degree forgery. After a plea of not guilty, he was tried before a jury, which found him guilty as charged. At the conclusion of the state's case, a motion in behalf of the appellant for dismissal on the grounds that the state had failed to prove the crime as charged was denied. The appellant introduced no evidence. Appellant has appealed, assigning as error: 1. The denial of the aforementioned motion; 2. The acceptance into evidence of a statement signed by appellant; 3. The giving of certain instructions by the court; and, 4. The refusal of the court to give certain instructions requested on behalf of appellant.

The basic questions in this appeal are:

1. Whether the use of, (a) an assumed, or (b) a fictitious name, can constitute first degree forgery; and

2. Whether, in this case, the state's evidence could support a jury verdict that appellant was guilty of first degree forgery. In this opinion both questions are resolved in the affirmative in the somewhat detailed discussion that follows.

It appears from the evidence that appellant moved to the Haddon Hall Apartments in Seattle, Washington, shortly before February 6, 1950; that while there, he was known

to the manager of the apartment house as a Mr. J. C. Coe. The manager of the apartment house testified that a check in the sum of fifty-five dollars, drawn on the Seaboard Branch of the Seattle First National Bank, was accepted by the manager's wife; that appellant received therefor some cash and the balance was applied on the rental of an apartment. An officer of the bank testified that their records back to the year 1934 showed no account in the name of J. C. Coe. Over the objection of the appellant, the prosecution introduced a statement taken before an interrogating officer of the Seattle police department and signed by the appellant. The material portion of the statement is as follows:

"Feb. 22, 1950 10:15 AM.

"Ernest F. Lutes, 46 years Fry Hotel, Seattle. I am not working at present. I have lived around Seattle since 1933.

"On being shown the following described check Seattle Wash Feb. 6, 1950—pay to Haddon Hall Apts $55.00 signed J. C. Coe - Rt. No. 1 Box 7C Renton drawn on the Seaboard Branch, Seattle 1st Nat'l Bank.

"I wrote and cashed this check at the Haddon Hall Apts 1921-3rd Ave. I received $10.00 cash and $45.00 was for 2 weeks rent. I knew at the time I wrote and cashed this check that I did not have an account in the Seaboard Branch of Seattle 1st Nat'l Bank under the name of J. C. Coe or any other name. I just made up the name of J. C. Coe.

"I have read the above and it is true to the best of my knowledge.

"signed:

"Ernest Lutes."

The interrogating officer of the Seattle police department testified that he talked to the appellant on February 22, 1950, and at that time knew appellant as "Ernest Lutes."

The foregoing is from the state's case. The appellant, as pointed out above, introduced no evidence but relied upon his motion to dismiss.

Rem. Rev. Stat., §§ 2583 to 2590 [P.P.C. §§ 115-129 to 115-143], inclusive, relate to the crime of first degree forgery. The provisions of Rem. Rev. Stat., § 2583, seem-

ingly pertinent to the instant case, may be excerpted as follows:

"Every person who, with intent to defraud, shall forge . . . any request for the payment of money or delivery of property or any assurance of money or property ` . . . shall be guilty of forgery in the first degree, and shall be punished by imprisonment in the state penitentiary for not more than twenty years."

The provisions of Rem. Rev. Stat., § 2590, seemingly pertinent to the instant case, may be excerpted as follows:

"Within the provisions of this subdivision relating to forgery . . .

"The words 'forge,' 'forgery,' 'forged' and 'forging,' shall include false making, . . . of a genuine instrument in whole or in part, the false making or counterfeiting of the signature of a party or witness, real or fictitious, . . ."

It should be noted that the above quoted statutes do not define the crime of first degree forgery in minute and specific detail. The critical or operative word in the excerpt from Rem. Rev. Stat., § 2583, is the word "forge." Its meaning is to be determined by reference to accepted and well understood definitions of the term.

Forgery, under the early English statutes, was a crime punishable by death. It would certainly not be indicated by any of the briefs filed in this appeal, but decisions defining the crime of forgery are legion. On the basis of our independent research, two definitions of the crime of forgery seem to emerge from the voluminous case law on the subject. One definition seems more narrow in scope than the other. In *Ex parte Windsor*, 10 Cox C. C. 118, 11 Jur. (N.S.) 807, 13 Weekly Rep. 655 (1865), we find the following quoted definition:

"As to forgery, . . . it is the making or altering of a document with intent to defraud or prejudice another so as to make it appear to be a document made by another."

The above definition appears to be the foundation of the decisions in the following English cases: *Rex v. Dunn*, 1 Leach 57, 168 Eng. Rep. 131 (1765); *Reg. v. Martin*, 5 Q. B. D. 34 (1879). In line with the foregoing definition, the

following language is found in *Commonwealth v. Costello*, 120 Mass. 358, 370 (1876):

"The essential element of forgery consists in the intent, when making the signature or procuring it to be made, to pass it off fraudulently as the signature of another party than the one who actually makes it."

See, also, *State v. Wilson*, 168 La. 932, 123 So. 624; Mann *v. People*, (concurring opinion) 15 Hun. (N.Y.) 155, 165, aff. 75 N. Y. 484; *Commonwealth v. Baldwin*, 11 Gray (Mass.) 197, 198; *State v. Young*, 46 N. H. 266; *Edwards v. State*, 53 Tex. Crim. App. 50, 108 S. W. 673; *State v. Lamb*, 198 N. C. 423, 152 S. E. 154; *Goucher v. State*, 113 Neb. 352, 204 N. W. 967, 41 A. L. R. 227.

Appellant contends that the foregoing is the definition of the crime of forgery contemplated by the statutes of the state of Washington. This definition will be referred to hereinafter as the "narrow" definition of the crime of forgery.

A somewhat broader definition of the crime of forgery is set forth in 3 Jacob's Fisher's Digest (1882), 3232, reading as follows:

"Forgery is the false making of an instrument, which purports on the face of it to be good and valid for the purposes for which it was created, with a design to defraud any person or persons. R. v. Jones, 2 East P. C. 991."

See, also, 6 Mews' Digest (Eng.) (2d ed.) 490. This definition seems to be the foundation of the decisions in the following English cases: *Rex. v. Lockett*, 1 Leach 94, 168 Eng. Rep. 149 (1772); *Rex. v. Sheppard*, 1 Leach 226, 168 Eng. Rep. 215 (1781); *Rex. v. Marshall*, Russ & Ry. 75, 168 Eng. Rep. 691 (1804); *Rex v. Peacock*, Russ & Ry. 278, 168 Eng. Rep. 801 (1814); *Reg. v. Ritson*, 11 Cox C. C. 352 (1869).

Similarly, in 2 Bouvier's Law Dictionary (3rd Rev.) 1283, the crime of forgery is defined broadly as follows:

"The false making or materially altering, with intent to defraud, any writing which, if genuine, might apparently be of legal efficacy or the foundation of a legal liability. 2 Bish. Cr. Law, § 523; *Smith v. State*, 29 Fla. 408, 10 South 894."

See, also, *Dexter Horton Nat. Bank v. U. S. Fidelity & Guaranty Co.*, 149 Wash. 343, 270 Pac. 799; *State v. Wheeler*, 20 Ore. 192, 25 Pac. 394; *Harris v. State*, 19 Ala. App. 484, 98 So. 316; *State v. Melson*, 161 La. 423, 108 So. 794; *Lyman v. State*, 136 Md. 40, 109 Atl. 548; *Randolph v. State*, 65 Neb. 520, 91 N. W. 356; *People v. Warner*, 104 Mich. 337, 62 N. W. 405; *State v. Larson*, 39 S. D. 120, 163 N. W. 566; 17 Words & Phrases (Perm. ed.) 341, *et seq.*

This last definition will be referred to hereinafter as the "broad" definition. It appears to be sufficiently broad to cover the situation where a party falsely makes a writing, using not the name of *another actual person,* but either, (a) an assumed name, assumed for a dishonest purpose, or, (b) a fictitious name. One distinction between the "narrow" and the "broad" definition appears to be that the "narrow" one contemplates a fraudulent use by one party of the name of another *actual* party; while the "broader" definition includes the use of either (a) an assumed name, assumed for a dishonest purpose, or (b) a fictitious name.

Two things should be noted at this point. *First,* as a general rule, forgery cannot be charged if the accused signs or uses his own true or actual name. *State v. Ford,* 89 Ore. 121, 172 Pac. 802; *State v. Adcox,* 171 Ark. 510, 286 S. W. 880. However, this observation must be qualified when the name of the accused is identical with the name of another and the writing is passed off by the accused—not as his own but as that of the other person with the identical name—in which case it may be forgery. *State v. Farrell,* 82 Iowa 553, 48 N. W. 940; *Barfield v. State,* 29 Ga. 127; *Edwards v. State,* 53 Tex. Crim. App. 50, 108 S. W. 673; See, also, 37 C. J. S. 38, Forgery, § 9. *Second,* a person can change his name or adopt any name he may desire, provided the same is done for an honest purpose. *Christianson v. King County,* 196 Fed. 791; *Petition of Merolevitz,* 320 Mass. 448, 70 N. E. (2d) 249, and cases cited therein.

After adopting or assuming a name for an honest purpose, its use (for example, the signing of an honestly assumed name on an N. S. F. check, or other instrument) would not

constitute forgery, unless the person using the name falsely assumed it for the purpose and with the intent of perpetrating a fraud. In *Rex v. Peacock,* Russ & Ry. 278, 168 Eng. Rep. 801, 804 (1814), charging forgery, where the defendant attempted, on appeal, to justify use of an allegedly assumed name, an interesting comment relative to the defendant's burden of going forward with proof on this point, reads:

"Where proof is given of the prisoner's real name, and no proof of any change of name until the time of the fraud committed, that it throws it on the prisoner to shew that he had before assumed the false name, on other occasions and for other purposes."

See, also, 37 C. J. S. 90, Forgery, § 80a.

Forgery in the state of Washington appears not to have been limited to the narrow definition. In *Dexter Horton Nat. Bank v. U. S. Fidelity & Guaranty Co.,* 149 Wash. 343, 270 Pac. 799, this court adopted and applied the broad definition relative to forgery. As a matter of fact, the two definitions are not mutually inconsistent. The broader definition includes the narrow one within its scope.

Aside from the narrow and broad definitions of the crime of forgery found in English and American case law, the pertinent provisions of Rem. Rev. Stat., § 2590, excerpted and quoted above, cover the situation involved in the instant case.

In considering appellant's motion to dismiss, we are governed by the rule well stated in *State v. McDaniels,* 30 Wn. (2d) 76, 190 P. (2d) 705, as follows:

"A challenge to the sufficiency of the evidence or a motion having that effect admits the truth of the evidence of the party against whom the challenge or motion is made and all inferences that reasonably can be drawn from such evidence, and requires that the evidence be interpreted most strongly against the challenger or movant party and in the light most favorable to the opposing party. *Kellerher v. Porter,* 29 Wn. (2d) 650, 189 P. (2d) 223, and cases therein cited."

The signed statement of appellant opens with the words, "Ernest Lutes." This is immediately followed by a comma

and the language, "46 years Fry Hotel, Seattle." The personal pronoun "I" is used nine times in the statement, obviously referring to the name of "Ernest Lutes" which appears at the beginning of the statement and is signed at the end of it. This provides basis for a proper inference by the jury that appellant's name is Ernest Lutes, that he used that name and is commonly known by that name. The next to the last sentence of the statement reads, "I just made up the name of J. C. Coe." The immediately preceding sentence reads, "I knew at the time I wrote and cashed this check that I did not have an account in the Seaboard Branch of Seattle 1st Nat'l Bank under the name of J. C. Coe or any other name." These provide the bases for a proper inference by the jury that J. C. Coe was either, (a) an assumed name, assumed for a dishonest purpose, or (b) a fictitious name.

The above references, together with the statement in its entirety, *plus the testimony* of the interrogating officer that he knew appellant as Ernest Lutes on February 22, 1950, justify an inference by the jury that appellant was known by the name of Ernest Lutes, that he made up the name of J. C. Coe on the spur of the moment. There is little or no evidence that appellant adopted the name of J. C. Coe for an honest purpose, or that he had used it for any length of time, or for a purpose other than to perpetrate the crime of forgery, as charged in this case. The evidence was sufficient to support inferences along the above lines and the jury apparently did draw those inferences when the case was submitted.

 Here, it may be well to mention the matter of proof of the *corpus delicti,* when such proof includes an *extrajudicial* statement by an accused. The controlling principle is well stated in *State v. Meyer,* 37 Wn. (2d) 759, 226 P. (2d) 204, as follows:

"In order to establish the *corpus delicti* of any crime, there must be shown to have existed, a certain act or result forming the basis of the criminal charge and the existence of a criminal agency as the cause of such act or result. . . .

"The confession of a person charged with the commission of a crime is not sufficient to establish the *corpus delicti,* but if there is independent proof thereof, such confession may then be considered in connection therewith and the *corpus delicti* established by a combination of the independent proof and the confession. . . .

"The independent evidence need not be of such a character as would establish the *corpus delicti* beyond a reasonable doubt, or even by a preponderance of the proof. It is sufficient if it *prima facie* establishes the *corpus delicti.*"

■ The testimony of the interrogating officer that he knew appellant as Ernest Lutes plus the banker's testimony respecting no account under the name J. C. Coe constitutes the necessary independent evidence to permit consideration of appellant's confession to establish the *corpus delicti.*

■ Applying, (a) the accepted legal definitions of forgery, with particular emphasis on the broad definition, and (b) the language of Rem. Rev. Stat., § 2590, to the facts of the instant case, considering the above review and analysis of the state's evidence, the conclusions are reached:

1. That under the circumstances in this case the use of the fictitious name, J. C. Coe, would constitute forgery in the first degree; and,

2. That the state's evidence was sufficient to support a jury verdict that appellant was guilty of first degree forgery. It follows that the trial court did not commit error in denying appellant's motion to dismiss.

The appellant assigns error based upon the admission into evidence of appellant's statement quoted above, signed "Ernest Lutes." This particular assignment of error was not discussed in appellant's brief. No citations of authority on this point have been furnished to this court in this appeal. Consequently, this assignment of error would seem to merit no consideration under our decision in *Devlin v. Department of Labor & Industries,* 194 Wash. 549, 561, 78 P. (2d) 952. However, we point out in passing that this particular contention of appellant basically appears to be without merit in view of the overwhelming weight of authority favoring admission into evidence of statements involving circumstances not substantially different from appellant's.

■ Appellant assigns error based on the trial court's submission of instructions Nos. 3 and 9 to the jury. These instructions were not set out in full in appellant's brief as required by Rule 16 (5) of the Rules of this court (amended and now appearing as Rule of Supreme Court 42 (1) (f) 34A Wn. (2d) 45). Therefore, the errors assigned will not be considered. *State v. Meyer, supra.*

Appellant contends that the trial court erred in not submitting appellant's proposed instruction No. 2, which reads as follows:

"You are instructed that there is no such thing as a 'legal name' of an individual in the sense that he may not adopt or acquire another. A man's name, for all practical and legal purposes, is the name by which he is known."

■ It is well settled that error may not be successfully established based on the failure of the trial court to give a requested instruction, if that instruction is not correct in its entirety. *Hardinger v. Till,* 1 Wn. (2d) 335, 96 P. (2d) 262. Appellant's requested instruction No. 2 omitted the very necessary qualification that the adoption of another name or an assumed name is permissible if the purpose involved is an honest one. The instruction, in the form proposed, went entirely too far.

■ Appellant contends that the trial court erred in failing to submit to the jury appellant's instruction No. 3, reading as follows:

"You are instructed, that, if a check is executed by the party purporting to convey, it is not forgery."

In view of what has been said heretofore, this requested instruction stated the law applicable to forgery incorrectly.

On the basis of the foregoing, we find no error was committed.

The judgment of the trial court is affirmed.

SCHWELLENBACH, C. J., BEALS, HILL, and DONWORTH, JJ., concur.