[No. 40491.     Department Two.     April 9, 1970.]

THE STATE OF WASHINGTON, *Respondent*, v. JESSE EUGENE HAISLIP, *Appellant.**

*Reported in 467 P.2d 284.

*Hobart S. Dawson* and *Byron L. Swedberg,* for appellant (appointed counsel for appeal).

*Stan Pitkin* and *James P. Thompson,* for respondent.

FINLEY, J.—Jesse Haislip was charged and convicted of two counts of forgery. He was also subsequently charged with being a habitual criminal. He was found guilty as charged and sentenced to life imprisonment. He now appeals from these judgments and the sentence imposed.

Both counts of forgery involved checks for $20, payable to cash from the account of Delbert Freeman in the North-western Commercial Bank in Bellingham, Washington. Haislip had been a friend of Freeman and on one occasion accompanied Freeman to the trailer where Freeman lived. It is not questioned that the defendant had the opportunity to take several blank checks while he was visiting the trailer.

The state introduced no evidence by anyone who recognized or remembered Haislip as being the one who passed the check. Indeed, the defendant called the manager and several other employees of the grocery where one of the checks was cashed. All testified that they knew Haislip by sight and that they did not remember his cashing the checks in question.

Most of the state's case was built upon the testimony by Sergeant Kelsen from the Seattle Police Department, an expert on handwriting. He made comparisons between the two forgeries and three genuine checks which were in defendant's handwriting. He concluded that the defendant had written the figures and words for the dollar amount and in all probability had written the word "cash" on both forgeries. He stated that he had no opinion and was unable to testify about the identity of the author of the forged signatures.

At the conclusion of the trial, the jury returned a verdict of guilty on both counts. Haislip was subsequently sentenced to life imprisonment upon a finding of guilty to a habitual criminal charge.

There are a number of assignments of error upon which appellant Haislip relies. They relate to errors in instructions on expert testimony, the presumption of innocence, direct and circumstantial evidence, reasonable doubt, and the law governing the crime of forgery. Appellant also contends that adverse pretrial publicity was prejudicial and made it impossible for him to have a fair trial.

The most serious challenge to the validity of the conviction evolves around the failure of the state to introduce expert testimony tending to show that the signature on the checks in question was similar to the handwriting of appellant. He contends that there should have been an instruction given which in essence would have limited the word "forge" to the false making of a signature. That proposed instruction read as follows:

> As used in the information filed in this case and in these instructions, the words 'forge' and 'forged' include the false making or counterfeiting of the signature of a party, real or fictitious.

The instructions as given, essentially paraphrasing the forgery statute, read as follows:

> Every person who, with intent to defraud, signs the name of another person, knowing that he has no authority so to do, or falsely makes, alters, forges or counterfeits a check is guilty of forgery.

The words 'forge' and 'forged' include the false making of a genuine instrument, in whole or in part, and the false making or counterfeiting of the signature of a party, real or fictitious.

We do not believe appellant's contentions are well taken. In the first place, there was evidence before the jury which could have formed the basis of a finding that Haislip in fact forged the signature. The jury had the two checks involved before them as well as other checks, which beyond question were written and signed by Haislip. The fact that the expert witness was unable to testify with any assurance that Haislip did or did not sign the checks in question is no reason that the jury could not independently make their own comparison. *See Mitchell v. Mitchell*, 24 Wn.2d 701, 166 P.2d 938 (1946); Annot., 80 A.L.R.2d 272 (1961).

██ Even if we were to assume that there was no basis for a finding that Haislip forged the signature, it would not follow that he could not be convicted under RCW 9.44.020 and the instructions as given. The provisions of RCW 9.44.020 applicable to the instant case, may be excerpted as follows:

Every person who, with intent to defraud, shall forge . . . any request for the payment of money . . . shall be guilty of forgery in the first degree . . .

We have noted that the definition of forge as used in that statute "is to be determined by reference to accepted and well understood definitions of the term." *State v. Lutes*, 38 Wn.2d 475, 478, 230 P.2d 786, 788 (1951). Although the term is not precisely defined by RCW 9.44.010, the term "forge" includes at least the offenses mentioned therein. The excerpted portion of that statute which is pertinent to this case reads:

The words 'forge,' 'forgery,' 'forged,' and 'forging,' shall include false making, 'counterfeiting' and the alteration, erasure or obliteration of a genuine instrument in whole or in part, the false making or counterfeiting of the signature of a party or witness, real or fictitious . . .

Appellant contends that the first portion of the statute re-

garding the false making of a genuine instrument in part could not refer to the checks here involved because they are spurious documents and not valid or "genuine" in themselves. If his contention were accepted, the statute would make no sense. It is a logical impossibility for one to falsely make or counterfeit an instrument which is also valid or "genuine." If "genuine instrument" is to mean anything, it must refer to the myriad of writings enumerated in RCW 9.44.020 which affect legal rights. By this we mean any instrument which purports on the face of it to be good and valid for the purpose for which it was created. Thus one may falsely make out in whole or in part a blank check. This act of course is not a felony unless it meets the additional element of intent to defraud as set forth in RCW 9.44.020. There is also one further requirement. The recognized rule is that in order to constitute a forgery a writing or instrument must be such that if genuine it would have efficacy as affecting some legal right. *State v. Morse*, 38 Wn.2d 927, 234 P.2d 478 (1951). In *Morse* this court was faced with the question of whether the signature "Hillyard Motors" was a forgery and, if a forgery, was sufficient to create apparent legal efficacy without an individual signature. We held that evidence showing that the signature "Hillyard Motors" was not made by anyone with authority to sign checks at Hillyard Motors was enough to establish that the signature was forged by someone. In the instant case there was ample testimony on the basis of which the jury could have found that the signature was a forgery, *i.e.*, that it was not signed by Delbert Freeman. There can be no question that the check, if valid, would have efficacy in affecting legal rights. On its face it has everything required in order to qualify as a "written instrument" within the meaning of the forgery statute.

■ There is no requirement either in common law or by statute that the accused personally write each and every item which is required in order to make the instrument apparently valid on its face. In *State v. Taes*, 5 Wn.2d 51, 104 P.2d 751 (1940), we held that an instrument purporting to be a bank check but not containing the name of any

bank would not, if genuine, have such efficacy as to furnish the basis for a charge of forgery. Although the name of the bank is required, there is obviously no requirement that the state prove that the name of the bank was written in the accused's handwriting. We do not believe that there was error on this issue regardless of how the jury instruction is interpreted.

Appellant also contends that adverse pretrial publicity about a pending robbery charge and to the effect that the state would demand writing exemplars were prejudicial. The publicity is allegedly in violation of the Bench-Bar-Press Guidelines. The following was the brief news item read several times over a local radio station on the Thursday and Friday preceding the Monday trial:

Scheduled to begin Monday morning before a jury is the case of the State versus Jesse Eugene Haislip. Haislip was arrested for allegedly robbing Robert Dennis of $500.00 in March of 1967—and charged on two counts of first degree forgery of the name of Delbert Freeman on a pair of $20.00 checks which proved to be worthless last May. Deputy Prosecuting Attorney James P. Thompson plans to move to require the defendant to provide a complete handwriting sample before the case begins next Monday morning. Attorney Byron Swedberg represents Haislip.

On the day the trial convened a story appeared on page 8 of the Bellingham Herald which read in part:

A Superior Court jury began listening to the forgery and robbery case against Jesse Haislip, 45, Monday in Judge Bert Kale's courtroom.

The jury was selected shortly before lunch.

Haislip is accused of robbing by force $500 from Robert Dennis and forging two $20 checks with the name Delbert Freeman here last May. He has pleaded innocent to both charges.

Appellant contends that the information that Haislip was being tried for both robbery and forgery was incorrect and prejudicial. There is no question but that parts of the newspaper article were incorrect. However, that does not mean that it was prejudicial. Haislip was in fact arrested for robbery. This charge was pending and a trial

date had been set. It is no violation of the Guidelines to report the fact of an arrest for robbery. The robbery count had been severed before trial, a fact which was overlooked by the newspaper. But, there was no prejudice which can be shown from this relatively obscure news story which, at most, misreported the date of a trial which had been set.

■ The disclosure that the state planned to move for handwriting exemplars raises different questions. Statements concerning anticipated evidence should generally be avoided whenever possible. However, we hardly think the one sentence in the very brief news item was enough to create the atmosphere and notoriety which may taint a case.

There is a further facet to appellant's argument. He contends that the further action of the state in mentioning the lack of exemplars made the earlier news item prejudicial. We disagree.

The state subsequently moved, in the absence of the jury, for handwriting exemplars. The deputy prosecutor conditioned his motion with the comment "it's never been sanctioned by the court. I don't believe it's been tested. If it has I haven't found it."[1] The trial court denied the motion. The only comment heard by the jury was a comment later in the trial by the expert witness that he lacked samples of handwriting upon which to base an opinion as to the signature. We do not believe that statement was prejudicial.

Appellant also claims that the court's instruction on circumstantial evidence is prejudicial error. The portion of the instruction which he objects to reads:

> [W]here circumstantial evidence is relied upon for a conviction, all of the circumstances which are proved must be consistent with each other and consistent with the hypothesis that the accused is guilty, and at the same

---

[1]The deputy prosecutor's search for precedent was not exhaustive. *See Gilbert v. California,* 388 U.S. 263, 18 L. Ed. 2d 1178, 87 S. Ct. 1951 (1967); *Lewis v. United States,* 382 F.2d 817 (D.C. Cir. 1967); *but see United States v. Green,* 282 F. Supp. 373 (S.D. Ind. 1968). *Cf. State v. Craig,* 67 Wn.2d 77, 406 P.2d 599 (1965); *State v. McLaughlin,* 74 Wn.2d 301, 444 P.2d 699 (1968).

time inconsistent with every other reasonable conclusion except that of the guilt of the accused.

The instruction proposed by appellant was an almost exact quotation from *State v. Gillingham,* 33 Wn.2d 847, 207 P.2d 737 (1949):

It is a well-established rule of law that, in order to sustain a conviction on circumstantial evidence, the circumstances proved by the state must not only be consistent with each other and consistent with the hypothesis that the accused is guilty, but also must be inconsistent with any reasonable hypothesis or theory which would establish, or tend to establish, his innocence.

■ The instruction requested by Haislip was probably better than the instruction actually given. However, we must look to the effect of the instructions as a whole before we decide that the failure to give any one instruction was prejudicial error. The essence of appellant's objection is that instruction No. 7 did not tell the jury that they could not base a conviction on circumstantial evidence unless every reasonable hypothesis of innocence was excluded. However, an earlier portion of the same instruction, omitted from the quoted portion in appellant's brief, clearly states that circumstantial evidence must be "of such character as to exclude every reasonable hypothesis other than that of the guilt of defendant . . ." We can find no prejudicial error in this instruction.

■ Haislip requested an instruction specifically on the subject of testimony by expert witnesses. The jury was instructed generally that they were the sole and exclusive judges of the testimony and credibility of the witnesses and of the weight to be attached to each. We have previously noted in a civil case that "[i]t perhaps would have been wise to have specifically called the jury's attention to the fact that this instruction also applied to expert witnesses." *Gerberg v. Crosby,* 52 Wn.2d 792, 329 P.2d 184 (1958). This admonition would apply to a criminal trial. However, the error, if any there was, in failing to give the proffered instruction was harmless. It would not have constitutional dimensions such as might require automatic reversal. The

expert witness was the main witness relied upon by the state; the instruction on witnesses generally clearly applied to him. The jury was constantly reminded that they and they alone were the triers of fact.

Haislip personally submitted several additional assignments of error. One in particular raises points which require some elaboration. He contends that there was no showing that the defendant had aid of counsel in the prior convictions which form the basis of the habitual criminal conviction. This was allegedly in violation of *Burgett v. Texas*, 389 U.S. 109, 19 L. Ed. 2d 319, 88 S. Ct. 258 (1967), which suggests that prior convictions rendered in violation of due process standards cannot be used to enhance penalties. The prosecutor dismisses this claim, noting that the "record does not disclose whether or not appellant was without counsel," but that even if he did not have counsel, *Gideon v. Wainwright*, 372 U.S. 335, 9 L. Ed. 2d 799, 83 S. Ct. 792 (1963), is not retroactive and thus counsel did not have to be provided. Although the prosecutor is wrong on both counts, it does Mr. Haislip little good. *Gideon* is not limited to prospective applications. *See Doughty v. Maxwell*, 376 U.S. 202, 11 L. Ed. 2d 650, 84 S. Ct. 702 (1964); *Pickelsimer v. Wainwright*, 375 U.S. 2, 11 L. Ed. 2d 41, 84 S. Ct. 80 (1963). However, it is equally clear that the record shows counsel was available on at least two of the prior convictions involved. Haislip was represented by counsel in the California trial for forgery which led to his conviction in 1957 and again during a trial in Arizona which led to his 1960 conviction for cashing a bogus check. These convictions adequately support the finding that Haislip was a habitual criminal, so we need not reach the questions raised by *Burgett, supra*.

We have considered the numerous other assignments of error and find them completely without merit. Nothing would be gained by a further discussion of these points.

The judgment is affirmed.

HUNTER, C. J., ROSELLINI, J., and LEAHY, J. Pro Tem., concur.

NEILL, J. (dissenting)—I am in disagreement with the majority's premises: first, that a conviction of forgery by the making of a spurious instrument is proper where the accused is shown to have made out only a part of an instrument that is now complete, regardless of a lack of evidence that an efficacious instrument left the defendant's hands; and, second, that there was sufficient evidence on which the jury could conclude beyond a reasonable doubt that defendant forged the signatures to the checks.

To constitute a forgery, there must be a making of a writing or instrument that, if genuine, would operate to affect some legal right. *State v. Morse,* 38 Wn.2d 927, 234 P.2d 478 (1951); *State v. Taes,* 5 Wn.2d 51, 104 P.2d 751 (1940); *State v. Kuluris,* 132 Wash. 149, 231 P. 782 (1925). However, the accused need not have forged the entire instrument; it is sufficient under RCW 9.44.010 that his acts constitute a false making of a genuine instrument in whole or in part or the false making of a signature.

An accused has not committed a forgery by the false making of a genuine instrument in whole or in part unless his act has the effect of creating a seemingly "genuine instrument" or alters, erases or obliterates a genuine instrument. We have held that such an instrument is not created when a purported bank check does not contain the name of a bank. *State v. Taes, supra.* A blank check does not become a seemingly genuine instrument unless, among other things, it is signed. Here, it is quite doubtful that there is any evidence that the check blanks in question contained a signature when they left the defendant's control. I will discuss this absence later. My present concern is with the majority's assertion that such evidence is unnecessary. The majority rationale would hold an accused guilty of forgery whenever he is shown to have forged some part of an instrument, irrespective of the fact that his act did not result in a seemingly genuine instrument, so long as a sufficiently complete instrument is ultimately in evidence. Thus, if an accused once begins a forgery, and the incomplete instrument is then taken, completed and negotiated by a stranger, under the majority's view the accused would

still be guilty of forgery. As I perceive the rule, an accused in some circumstances may be guilty of an attempt, but he is not guilty of the completed crime of forgery.

In a charge of forgery under RCW 9.44.020, the state must prove either that the accused perpetrated a "false making . . . of a genuine instrument in whole or in part" or the "false making . . . of the signature." (Other acts of forgery defined in RCW 9.44.010 are not pertinent here.) As to the first method of forgery, the state must prove that the accused committed an act or acts which, when alone or when combined with prior or concerted acts of others, results in a seemingly genuine instrument. The proof required under the second method of forgery relates solely to the signature.

The jury had before it three genuine checks written by the defendant, the two bogus checks, and two samples of the writing of the complaining witness whose name had been forged on the bogus checks. The state's own expert witness gave "negative testimony" about the sufficiency of this evidence. That is, he testified that the evidence presented was not sufficient as a basis for concluding that the defendant had forged the signatures on the bogus checks. The majority states that this uncountered negative testimony is of no significance and that the jury, in its own deliberations, could reach a conclusion which the expert stated was not reachable. I disagree.

In order to correctly perceive the present issue, it is important to narrow the scope of attention. This case does not involve the question of whether a trier of fact may, in the complete absence of expert testimony, make an independent comparison between the disputed writing and admittedly genuine specimens of the defendant's handwriting which are in evidence. *See Mitchell v. Mitchell,* 24 Wn.2d 701, 166 P.2d 938 (1946); *State v. Simmons,* 52 Wash. 132, 100 P. 269 (1909); *but cf. Clark v. State,* 114 So.2d 197, 80 A.L.R.2d 261, 268 (Fla. App. 1959). It may well be that, where especially technical subject matter is concerned, the burden of producing evidence should encompass a requirement of affirmative expert testimony; but that question is

not before us here. Rather, the matter before us is the effect of uncountered negative expert testimony pertaining to analysis of technical handwriting characteristics, not to comparison of same-name signatures.

The purpose and justification for expert testimony rests in the obscurity of the subject matter involved, because of which the jury requires the assistance of someone with special knowledge. *Cf.*, McCormick, Handbook of the Law of Evidence § 13 (1954). It seems to me that expert testimony is not only effective to draw conclusions from obscure or complex facts in evidence, but also to demonstrate that reasonable conclusions *cannot* be drawn from that evidence. In the latter instance, the expert testimony may be termed "negative." In cases where such testimony goes uncountered, the efficacy of the evidence to make out a prima facie case on the point in issue is nullified. Thus, where expert testimony is appropriate as to an ultimate fact, uncountered negative expert testimony constitutes a failure of the evidence to support the party bearing the burden of proof on that issue.

It is not denied that handwriting analysis and comparison is an appropriate subject of expert testimony. In the present case, that testimony was entirely negative as to the possibility of concluding from the evidence presented that defendant had forged the signatures on the bogus checks. As such evidence is essential to a conviction of the offense charged, the state has failed to meet its burden of proof.

I would reverse.