Harold Vance **MORRISON, Appellant,**

v.

**STATE of Alaska, Appellee.**

**File No. 1139.**

Supreme Court of Alaska.

May 15, 1970.

Joseph Rudd, Ely, Guess, Rudd & Havelock, Anchorage, for appellant.

Douglas B. Baily, Dist. Atty., Edmond W. Burke, Asst. Dist. Atty., G. Kent Edwards, Atty. Gen., Anchorage, for appellee.

Before BONEY, C. J., DIMOND, RABINOWITZ and CONNOR, JJ., and LEWIS, Superior Court Judge.

## OPINION

RABINOWITZ, Justice.

In this appeal, appellant seeks a reversal of his conviction of the crime of forgery.[1] The indictment under which appellant was tried charged that on the 30th day of September 1968 appellant

> did unlawfully and feloniously, with intent to injure and defraud Prairie Market, Inc. * * * Matanuska Valley Bank, Anchorage Branch, and Robert E. Seaman forge the name of the payee Robert E. Seaman as an endorsement to a check.
> * * *
> [W]ell knowing at the time of endorsing the check that he had no authority to sign the name of Robert E. Seaman.

The trial judge instructed the jury that an intent to defraud was an essential element of the crime of forgery. The jurors were further told that "An intent to defraud is an intent to deceive *another person* for the purpose of gaining some material advantage over him or to induce him to part with property or to alter his position to his injury or risk * * *." (emphasis added). Appellant argues that this instruction was incorrect in that it did not require the prosecution to prove appellant intended to defraud "a particular person or persons or a particular corporation."[2] A twofold approach embodying

1. AS 11.25.020(1) provides that:
   A person who, with intent to injure or defraud another * * * forges * * * a * * * check * * * issued by a person * * * is punishable by imprisonment in the penitentiary for not less than one year nor more than 20 years.

2. In regard to this specification of error, appellant advances the further contention that the trial court's failure to give appellant's requested instruction pertaining to intent to defraud was error. The requested instruction reads as follows:
   One of the essential elements of the crime charged in this case is an in-

analysis of Alaska's relevant statutory provisions concerning the subject of intent to defraud, as well as our opinion in Roberts v. State,[3] has led us to the holding that it was not necessary for the prosecution to prove, or for the trial court to instruct, that appellant intended to defraud a particular person, or persons, or a particular corporation.

AS 11.25.020,[4] the forgery statute under which appellant was indicted and tried, is modified by AS 11.25.055 which provides:

> If the intent to injure or defraud is necessary * * * to constitute the crime, it is sufficient to allege in the indictment for the crime an intent to injure or defraud without naming in the indictment the particular person or body corporate intended to be injured or defrauded, and, on the trial of the action, it is not considered a variance, but is considered sufficient if there appears to be an intent to injure or defraud the United States or a state, territory, borough, town, or other municipal or public corporation, or a public officer in his official capacity, or any private corporation, copartnership, or member thereof, or a particular person or persons.

Also pertinent here is AS 11.70.010 where, with regard to intent to defraud, it is stated that:

> Whenever, by a provision of this title, an intent to defraud is necessary to constitute a crime, it is sufficient if an intent appears to defraud any person.

On the basis of AS 11.25.055 and AS 11.70.010, we believe it clear an indictment for forgery under AS 11.25.020 need not allege that any particular person or corporation was defrauded.[5]

As noted previously, the indictment in the case at bar alleged an intent on appellant's part to defraud the Prairie Market, Matanuska Valley Bank, and Robert E. Seaman. Given this specificity, appellant contends the state was required to prove appellant intended to defraud the particular corporations and person named in the indictment rather than merely any person or corporation. We reject appellant's argument. In our view, AS 11.25.055 and AS 11.70.010 establish that at the trial of a forgery prosecution, it is considered sufficient if an intent to defraud any person or corporation is established.

Roberts v. State[6] supports this conclusion regarding the absence of any necessity for the prosecution to prove appellant entertained the intent to defraud a particular person or corporation at the time the forgery in question was committed. In *Roberts,* the appellant was convicted of forgery and passing a forged check. On appeal in that case, appellant contended the jury should have been instructed that before returning a guilty verdict they would have to find he had the specific intent to defraud, not just "someone" or "another," but the specific persons named in the indictment. In declining to adopt this contention, we pointed to AS 11.70.010 and said that its meaning

> as applied to this case, is that it was unnecessary to specify in the indictment who was defrauded by appellant's actions. However the fact that it was unnecessary to allege in the indictment who was defrauded, does not necessarily relieve the state from the burden of proving the indictment as it was written.[7]

We stated in *Roberts* that this conclusion concerning the prerequisites for sufficiency of an indictment was not dispositive of the

---

tention on the part of the defendant to injure or defraud. The law requires that it be proved beyond a reasonable doubt that the defendant intended to defraud a particular person or persons or a particular corporation.

3. 458 P.2d 340, 347–348 (Alaska 1969).

4. *Supra* note 1.

5. Appellant concedes that the state was not required to frame its indictment so that any particular person or corporation was defrauded.

6. 458 P.2d 340, 347–348 (Alaska, 1969).

7. *Id.* at 347.

question of whether a material variance existed between the particularized allegations of the indictment pertaining to intent to defraud and the trial court's generalized instructions on intent to defraud. We noted that:

[I]t appears to be the prevailing opinion that immaterial, unnecessary allegations in an indictment, which might be omitted without affecting the validity or charge of the indictment, need not be proved and may be properly considered surplusage.[8]

Of particular significance to our resolution of appellant's contentions concerning intent to defraud is the following passage from *Roberts*:

We believe that an unnecessarily detailed description of a material allegation in an indictment should be treated as analogous to an 'imperfection in matter of form' of the indictment within the meaning of Criminal Rule 7(c). The failure to prove (or the failure to submit instructions which require the jury to find) the existence of facts which correspond to an unnecessary description of a necessary element of an indictment will constitute reversible error only if the substantial rights of the accused are prejudiced.[9]

Under AS 11.25.055, AS 11.70.010, and *Roberts,* the prosecution in the case at bar was not required to specify the particular persons or corporations who were purportedly defrauded by appellant's forgery. The naming of Prairie Market, Matanuska Valley Bank, and Robert E. Seaman constituted surplusage which need not have been proven at trial. Our study of the record fails to reveal that any substantial rights of appellant were prejudiced as a result of the trial court's refusal to instruct the jury that before they could convict they must find that appellant sought to defraud the person and corporations mentioned in

the indictment. We therefore hold that there was no error with respect to the trial court's instructions concerning intent to defraud, or in regard to the lower court's refusal to give appellant's requested instruction pertaining to intent to defraud.[10]

■ The central contention embodied in appellant's remaining specifications of error is that the government's proof as to intent to defraud was insufficient, and therefore the trial court erred in denying appellant's various motions for judgments of acquittal. In order to illuminate the basis of our disposition of this contention, it is necessary that reference be made both to the evidence which was produced at trial and the historical antecedents of the forgery statute under which appellant was charged and tried.

At trial the state introduced a check ostensibly made on September 26, 1968, by Frank M. Kempton on the account of Western Chalet Lodge to Payee Robert E. Seaman on drawee Matanuska Valley Bank for $179.61. On the reverse side appears a general endorsement, "Robert E. Seaman, 1428 17th Ave.," and an endorsement, restricted to National Bank of Alaska for deposit only, by Prairie Market, Inc. National Bank of Alaska stamped it with its "Pay Any Bank" endorsement October 1, 1968, and, on October 4, with an "Endorsement Cancelled" stamp. The check had a white return slip attached, with the "Account Closed" and "No Authority to Pay" boxes checked and "Signature" circled.

Ronald Stratton, Assistant Manager of Prairie Market, Inc., testified that he took the check in question on the evening of September 30, 1968. About 6:20 p. m., some 20 minutes after the Prairie Market grocery store had closed, he let appellant into the store. Appellant then explained that he needed to buy some groceries for the Western Chalet Lodge, and that the groceries he required were mainly in case

---

8. *Id.* at 347 (footnote omitted).

9. *Id.* at 348 (footnotes omitted).

10. This holding is also dispositive of appellant's specification of error to the effect that the trial court erred in denying

appellant's motion for a new trial "on the ground that the jury was not properly instructed as to the requirement that it find that defendant intended to injure or defraud a particular person."

lots. Appellant inquired if Stratton could cash the check in question. Stratton examined the check and stated his suspicions were aroused because the portion of the check indicating the amount looked irregular. Stratton then asked appellant for identification and according to Stratton's testimony, appellant

> pulled out his wallet, he had numerous identifications, I asked him for a driver's license, the signature on the license matched the signature on the check after he had signed the check, he put on his address, I helped him with those groceries to his pick-up truck and that was it.[11]

At trial, Stratton identified appellant as the person who, in his presence that evening, endorsed the name Robert E. Seaman on the reverse side of the check in question. Stratton cashed the full amount of the check for appellant who then, out of the proceeds, paid Stratton $50 for the groceries he had purchased.

Stratton further testified that he had never knowingly conducted any prior business with either the Western Chalet Lodge or Frank M. Kempton, and that he had never seen appellant prior to the evening in question.[12]

---

11. According to Stratton's testimony, Robert Seaman was the name that appeared on the driver's license which was proferred by appellant. Stratton noted that the address on the license and the address which had been written on the reverse side of the check differed. Appellant told Stratton that he had moved since the license was issued.

12. After the check was returned by the bank, Stratton identified appellant from the one photograph that was shown to him by the police during the latter's identification.

13. The witness testified that he conducted a retail sporting goods business in Anchorage and in conjunction therewith, his wife was authorized to sign his signature. The witness further testified that the endorsement "Robert E. Seaman" on the check in question was not the handwriting of his wife.

14. In response to a question as to how he identified appellant as the person who

Robert Elsworth Seaman testified that he did not know appellant; that the "Robert E. Seaman" endorsement on the check in question was not his signature; that he had never authorized anyone else to sign his name on checks and more specifically, never authorized Harold Vance Morrison to sign his name on any check; that he had never lived at the address on the back of the check though he had lived on the same street five years before; that the check in question had never been in his possession; that he thought there was another Robert Seaman in Anchorage though he did not know him; and that he never used his middle initial when signing checks.[13]

Officer Phillip Licht, Jr., of the Anchorage City Police, gave testimony that he knew both Robert E. Seaman and Harold Vance Morrison. Officer Licht then made an in-court identification of appellant as Harold Vance Morrison.[14]

Counsel also stipulated that only one Robert Seaman was listed in the latest Anchorage telephone directory or the 1966 or 1967 Polk business directory for Anchorage, and that this Robert Seaman was the person who had testified for the prosecution.[15]

---

passed the check to Stratton, the witness answered, without objection:

> Well, we'd had a number of these checks passed in and around the Anchorage area with nobody re—well they remembered the description of the person but nobody knew him and I had no idea at all who was responsible until a confidential informant advised me.

15. The stipulation as stated to the jury by counsel for the government was as follows:

> [B]oth the defense and State have obtained three documents. The first being the Greater Anchorage Area Telephone Directory, the latest edition that is out. The second being the 1967 Greater Anchorage Area Directory produced by Polk * * * entitled Alaska Polk's Greater Anchorage Area Directory for 1967. The third being a similar type of Alaska Polk's Anchorage City Directory for 1966. To the best of our knowledge at this time, there is no later doc—later directory than the

We hold this evidence sufficient to sustain appellant's conviction of the crime of forgery. In Milton v. United States,[16] the court said:

> It is well settled that the signing of a fictitious name, with fraudulent intent, is as much a forgery as if the name used was that of an existing person. The public mischief, i. e., the legal tendency to defraud, is equally great in either event.[17]

The *Milton* statement is typical of those jurisdictions which have construed their respective forgery statutes as encompassing what has been characterized as a "broad" definition of the crime of forgery. An enlightening discussion by the Supreme Court of Washington of the historical antecedents of the "broad" and "narrow" definitions is contained in State v. Lutes.[18] In regard to the "broad" definition, the court in *Lutes* said:

> It appears to be sufficiently broad to cover the situation where a party falsely

makes a writing, using not the name of *another actual person,* but either, (a) an assumed name, assumed for a dishonest purpose, or, (b) a fictitious name. One distinction between the 'narrow' and the 'broad' definition appears to be that the 'narrow' one contemplates a fraudulent use by one party of the name of another *actual* party; while the 'broader' definition includes the use of either (a) an assumed name, assumed for a dishonest purpose, or (b) a fictitious name.[19]

Research discloses that AS 11.25.020, the forgery statute under which appellant was tried, was adopted from the laws of Oregon.[20] Since AS 11.25.020 derives from Oregon law, "it is presumed that it was adopted with the interpretation that had been placed upon it by the Oregon Supreme Court prior to 1900,"[21] where that interpretation was not obviously contrary to the

1967. \* \* \* We have searched these three books and we have found that there is only listed and I'll start with the first again, the Greater Anchorage Area Telephone Directory, only one Robert Seaman is listed, that Robert Seaman being the same person that testified earlier today. In the 1966 Anchorage City Directory, under the listing of Seamans there is only one Seaman listed as Robert E. He is identified as Bob Seaman's Sport Shop. The same person that was here today. There is no other listing for Seaman either Robert period, or R period or R period, E period. The only thing that is here is Robert E. and listed as Bob Seaman's Sport Shop. In the 1967 Greater Anchorage Area Directory, under Seamans we have the same situation. Only one person listed as Robert E, I should say, only one person listed by the name of Robert or R period is Robert E. and he's listed as Bob Seaman's Sport Shop. There is no R period Seaman or Robert Seaman or anything of that nature. \* \* \*

16. 71 App.D.C. 394, 110 F.2d 556, 560–561 (1940) (footnotes omitted).

17. In *Milton* 110 F.2d at 560, the court further remarked that:

> Forgery, at the common law, is the false making or materially altering, with

intent to defraud, of any writing which, if genuine, might apparently be of legal efficacy or the foundation of a legal liability.

18. 38 Wash.2d 475, 230 P.2d 786, 788–789 (1951).

19. *Id.* at 789.

20. Brandon v. United States, 190 F.2d 175, 177, 13 Alaska 372 (9th Cir. 1951), concerned a forgery prosecution under our forgery statutes. In regard to source of these statutes, the Ninth Circuit said:

> A brief history of Sections 4856 and 4861 Compiled Laws of Alaska 1933 reflects that the same were adopted as a part of the penal code for the Territory of Alaska by Act of Congress March 3, 1899, 30 Statutes at Large, 1263–1266. These provisions were taken from the laws of Oregon, October 19, 1864 and are presently embodied in the Oregon Compiled Laws, Volume 3, Penal Code as Sections 23–560 and 23–568. With this legislative history in mind, it would appear that the decisions by the Supreme Court of Oregon should be given controlling effect.

21. City of Fairbanks v. Schaible, 375 P.2d 201, 208 (Alaska 1962). *See also* Brandon v. United States, 190 F.2d 175, 177 (9th Cir. 1951).

express wording of the statute.[22] In 1890, the Oregon Supreme Court in State v. Wheeler [23] held that the signing of a fictitious name to an instrument with fraudulent intent constitutes forgery. *Wheeler* has been consistently adhered to by the Supreme Court of Oregon throughout the succeeding years.[24] The *Wheeler* line of decisions reflects what has become a settled rule that the crime of forgery can be committed by signing an instrument in a fictitious or assumed name with intent to defraud, even though the statute under which the prosecution is brought makes no specific reference to the use of a fictitious or assumed name.[25]

Under this construction of AS 11.25.020, we believe that fair-minded jurors could have differed on the question of whether appellant's guilt had been established beyond a reasonable doubt.[26] Review of the entire record has convinced us that the state's evidence was sufficient to withstand appellant's motions for judgments of acquittal. Fair-minded jurors could have rea-

sonably concluded that appellant employed a fictitious or assumed name by virtue of his endorsement of the name of Robert E. Seaman to the check in question. The jury had before it evidence that appellant was not Robert E. Seaman; that the Robert E. Seaman who conducted business in Anchorage never authorized appellant to sign his name to any check; that Mr. Stratton, the Assistant Manager of Prairie Market, had never done business with either Frank M. Kempton or Western Chalet Lodge prior to September 30, 1968; that prior to the evening in question, Mr. Stratton had not met appellant; that Mr. Stratton relied upon appellant's representations that he was Robert E. Seaman in deciding to cash in full the check in question. Further, the jury could have reasonably concluded that appellant, by virtue of his representations to Stratton and the signing of fictitious or assumed name in the latter's presence, had the intent to defraud Prairie Market.[27]

The judgment and commitment entered below is affirmed.

22. Beckley v. State, 443 P.2d 51, 55 (Alaska 1968).

23. 20 Or. 192, 25 P. 394 (1890). In the *Wheeler* case, the court characterized the essential elements of forgery as (1) false making of some instrument in writing; (2) a fraudulent intent; (3) an instrument apparently capable of effecting a fraud. In regard to the word "falsely," *Wheeler* said that its definition implies that "the writing is false, not genuine; fictitious, not a true writing; without regard to the truth or falsehood of the statement it contains." *Id.* at 395.

24. State v. Kelliher, 49 Or. 77, 88 P. 867, 868 (1907); State v. Ford, 89 Ore. 121, 172 P. 802, 803 (1918); State v. Swank, 99 Ore. 571, 195 P. 168, 172 (1921).

25. In United States v. Turner, 32 U.S. 132, 7 Pet. 132, 136, 8 L.Ed. 633, 635 (1833), Mr. Justice Story wrote:
   Upon examining the English authorities upon the subject of forgery and the utterance of counterfeit paper they appear to us fully to justify and support a similar doctrine. It is, for instance, clearly settled that the making of a false instrument, which is the subject of

   forgery, with a fraudulent intent, although in the name of a nonexisting person, is as much a forgery as if it had been made in the name of a person known, to exist, and to whom credit was due. (citations omitted)
   *See* Hubsch v. United States, 256 F.2d 820, 824 (5th Cir. 1958); Rowley v. United States, 191 F.2d 949, 951 (8th Cir. 1951); Milton v. United States, 71 App.D.C. 394, 110 F.2d 556, 560–561 (D.C.Cir. 1940); Buckner v. Hudspeth, 105 F.2d 393, 395 (10th Cir. 1939); State v. Lutes, 38 Wash.2d 475, 230 P. 2d 786, 788–789 (1951); Annot., 49 A.L.R.2d 852, 856–63 (1956).

26. Berfield v. State, 458 P.2d 1008, 1010 (Alaska 1969). In determining questions pertaining to the sufficiency of the state's evidence, we consider the facts in the record most favorably to the state and such reasonable inferences as the jury may have drawn from them.

27. *Compare* Hancock v. State, 123 Tex. Crim.R. 16, 57 S.W.2d 111, 114 (1933); State v. Maxwell, 151 Kan. 951, 102 P. 2d 109 (1940).